415 P.2d 893

PIONEER PLUMBING SUPPLY COMPANY, an Arizona corporation, and H. E. Davis, dba Rural Plumbing Company, Appellants,

v.

SOUTHWEST SAVINGS AND LOAN AS-SOCIATION, an Arizona corpo-ration, Appellee.

No. I CA–CIV 181.

Court of Appeals of Arizona.

June 28, 1966.

Rehearing Denied Aug. 2, 1966.

Review Denied Sept. 27, 1966.

·'Spector & Johnson, by Richard E. John-son, and William J. Samuels, Phoenix, for appellant Pioneer Plumbing Supply Co.

Pasquale R. Cheche, Phoenix, for ap-pellant H. E. Davis, dba Rural Plumbing Co.

Lewis, Roca, Scoville, Beauchamp & Linton, by John P. Frank and Gerald K. Smith, Phoenix, for appellee.

STEVENS, Chief Judge.

The question to be resolved is whether a subcontractor and his supplier, who timely filed their lien claims, can assert an equita-ble lien against the unexpended construction funds held by a lending agency where the borrower has reassigned those funds to the lender as additional security for the con-struction loan. We find no ruling in Arizo-na on this precise point. In our opinion the case of Moeur v. Farm Builders' Cor-poration, 35 Ariz. 130, 274 P. 1043 (1929) is not controlling.

The facts are without dispute insofar as the issue before us is concerned. A cor-poration owned 36 unimproved lots and through its officers, desired to construct houses thereon. The owner executed 36 separate and distinct notes and first mort-gages wherein the appellee was the mort-gagee, each note and mortgage relating to a separate lot. The mortgages were re-corded prior to the commencement of any construction and it is established that they were first liens. At the time of the execu-tion of the notes and the mortgages, the owner and the lender also executed con-struction loan agreements which were not recorded. By these agreements the owner

irrevocably assigned to the lender as security, all moneys loaned. The owner acknowledged that it had no right to any of the moneys except to have the money disbursed as specified in the agreements. The agreements set forth a schedule of percentage progress payments, each to be paid after certain specified work had been completed. The lender reserved the right to depart from the percentage progress payment formula and to make payments weekly or semi-weekly as the construction progressed. The lender reserved the right to inspect the construction. There were a number of rights which were reserved to the lender and by express provisions of the agreements the exercise of these rights, or any of them, did not in any way prejudice the lender in relation to its claims against the owner.

The owner became in default on all loans and the lender exercised its option to accelerate, declaring each of the loans to be due. At the time of default, a substantial portion of the construction on each house had been completed. Some money had been disbursed in reference to each house pursuant to the percentage progress payment formula and some funds remained undisbursed. However, the construction money expended did not equal the principal amount of the loan in relation to any of the houses. The lender credited the undisbursed funds against the principal sum of each note and mortgage. Three multi-count suits to foreclose the 36 mortgages were filed by the lender. The appellants along with others, were joined as parties defendant. In the meantime, the appellants had filed and served the statutory notices and claims of lien. The appellants acknowledge that the lender's lien is a prior lien as to each lot and they assert that they are entitled to an equitable lien against the undisbursed funds, asserting that this right is superior to the lender's right to retain and credit the undisbursed funds against the principal sum relative to each appropriate note.

Davis, doing business as Rural Plumbing, is a plumbing subcontractor and furnished his construction services to each house. Pioneer is a plumbing supply house from which Davis purchased the materials which were incorporated into the construction. Davis was not paid and by reason thereof Pioneer was not paid.

The lender filed its motion for summary judgment which was resisted by both Davis and Pioneer, each of whom filed their respective motions for summary judgment urging the establishment of an equitable lien. The three motions for summary judgment were presented to the trial judge on 11 March 1965. The minutes of that date reflect the filing of an affidavit by Pioneer, the granting of the plaintiff's motion for summary judgment and the denial of the defendants' motions for summary judgment.

A formal written judgment prepared by the attorney for the lender was lodged with the court on 15 March and was signed by the court on the 22nd day of March, being filed on the following day. In the meantime and on the 19th day of March, an affidavit was filed by Davis. It is urged that this Court on the appeal is not permitted to consider the Davis affidavit the same having been filed subsequent to the date of the hearing. The brief of the appellants asserts certain oral understandings which are not reflected in the minutes. However, the formal written judgment expressly acknowledges the filing of the Pioneer affidavit "and a similar avowel by counsel for H. E. 'Bud' Davis * * *". It would have been better practice for the attorneys to have made sure that the minute entries clearly reflected all oral understandings. Rule 80(d) of the Rules of Civil Procedure, 16 A.R.S. However, in view of the affirmative recitations in the form of judgment prepared by the lender's attorneys, we find no problem in relation to the late filing of the Davis affidavit.

In the Pioneer affidavit, the President of Pioneer states that he had discussions with the principal officers of the owner and was advised that Pioneer would be paid through the owner if Pioneer furnished supplies to Davis. These officers further advised that

money would be available by virtue of the mortgage financing the construction, which money would be furnished through an escrow with the Union Title Company. The affidavit further stated that it was in reliance upon these statements that the supplies and materials were furnished to Davis.

The Davis affidavit states that before he furnished any labor the officers of the owner advised him that he would be paid from the money loaned by the appellee; that during the course of the furnishing of labor it became apparent that the owner could not meet its bills and that Davis refused to continue. He was then informed by the officers of the owner that he and other subcontractors would receive their money by check directly from Union Title out of money borrowed from the lender, whereupon he continued his labor.

In the case of Irwin v. Murphey, 81 Ariz. 148, 302 P.2d 534 (1956), the Supreme Court had under consideration the claim of a person who had furnished labor and material, the claim being asserted against a lender who was the plaintiff in an action seeking to foreclose the construction loan mortgage. It was urged by the one who furnished labor and material that the building loan agreement which contained provisions for percentage progress payments was a contract for his benefit. Therein the court stated on Page 152 of the Arizona Reports, on page 537 of 302 P.2d:

"This court * * * has adopted the rule that the intent must be indicated in the contract itself. We dealt with the question in Treadway v. Western Cotton Oil & Ginning Co., 40 Ariz. 125, 10 P. 2d 371, and recovery under the third-party creditor-beneficiary doctrine was denied because the agreement was held not made for the third person's benefit in that the alleged benefit was not intentional and direct. We expressly held in that case that the benefit contemplated must be intentional and direct.

 *   *   *   *   *   *

"Irwin claims the benefit of an agreement between the mortgagor Luke and the mortgagee Murphey. There are no express statements in the agreement indicating that any class of persons furnishing work, labor or materials on such dwelling or that Irwin or any person similarly situated, was to directly benefit from it or that Murphey intended to be bound to anyone other than Luke. Whether a third-party beneficiary is merely an incidental beneficiary, or one for whose express benefit the contract was entered into and therefore one who can maintain an action on the contract, is always a question of construction."

It is urged that Irwin controls the case which we now have under consideration. It is our opinion that Irwin is not controlling.

█ It is the public policy of Arizona to protect the rights of those who furnish labor and material in the improvement of property. This is reflected by the case of Wylie v. Douglas Lumber Co., 39 Ariz. 511, 515, 8 P.2d 256, 258, 83 A.L.R. 918 (1932), wherein our Supreme Court stated:

"We are, however, convinced that our Legislature intended that laborers and materialmen, who contribute of their labor and means to enhance the value of the property of another should be jealously protected."

In Devry Brick Company v. Mordka, 96 Ariz. 70, 72, 391 P.2d 925, 926 (1964), our Court looked to the California decisions and stated:

" * * * that the language of our statute (A.R.S. 33–981) is substantially similar to the California statute and, therefore, 'the construction placed thereon by the California courts should be very persuasive, if not controlling.' "

In the situation before us, the lender has protected himself by recording the mortgage before any work was done and as a consequence the statutory lien rights of the laborer and of the materialmen are of little practical value. In this case, the lender controlled the disbursement of funds, they were not disbursed to the owner. The funds were disbursed only *after* the work

to be paid for had been completed. Between progress payments the laborers and the materialmen were required to use their own capital for the benefit of the improvement and, therefore, for the benefit of the lender. Even after the labor and material had been furnished, the lender could not be required to pay a sum in excess of the reasonable value thereof.

While the facts in the case of Smith v. Anglo-California Trust Co., a 1928 Supreme Court of California decision reported in 205 Cal. 496, 271 P. 898, are somewhat different from the facts now before us, it is our opinion that the principles set forth therein are persuasive. The California court ruled in relation to the contention that the third-party beneficiary principles applies in the same manner as Arizona ruled in Irwin. However, the California court sustained contentions similar to those presented to us and we quote from the decision. We recognize that the first paragraph hereinafter quoted has been disapproved, Lucas v. Hamm, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685, (Calif.1961). We nevertheless include it in the quotation to explain that portion thereof upon which we rely:

"Nor do we think the lien claimants can assert such right solely by virtue of the agreement of the securities company to advance the full sum of $20,000, for it is now well settled in this state that to give a third party, who may derive a benefit from the performance of a promise, an action thereon, there must have been an intent clearly manifested by the promisor to secure some benefit to the third party. In other words, the promise or contract must have been one 'made expressly for the benefit of a third person.' Section 1559, Civ.Code, 6 Cal. Jur. 473, § 280, and authorities there cited.

"What we have said, however, need not necessarily prove fatal to the cause of the appealing mechanics' lien claimants if there exist any special circumstances warranting the imposition in their favor of a charge or lien upon the fund now in dispute. * * *

"That the lien claimants must have relied upon the fund to be advanced to Smith by the securities company, and not alone upon the individual capacity of Smith or their right to a last lien upon the premises, as a means of obtaining payment for their labor and materials, is supported by every reasonable inference deducible from the surrounding circumstances. * * * therefore, to produce the conclusion that, without confidence in the payment to Smith of the full amount of the loan contract for, the lien claimants would not have extended credit for their labor and materials. The reasonableness of such expectations on the part of the lien claimants must naturally have suggested itself both to Smith and the securities company. They should have known that the consummated agreement for the money to be advanced to or on behalf of Smith as the building progressed, under a deed of trust taking priority over the statutory liens available to those contracting with him or the general contractor, would constitute a material inducement to them in supplying labor and materials. As if in express recognition of the reasonableness of these expectations, the practice was to make payments from, or withdrawals upon, the building loan account only as the work progressed and after the appraiser for the securities company had, in the line of his duty, reported progress warranting a payment. * * *

" * * * Smith and the securities company by their conduct may be said to have induced, or contributed to induce, the lien claimants to enhance the value of the real property by their labors and materials, and it would be inequitable and unjust, it seems to us, to permit Smith or his personal representative to withhold, at this time, any part of the fund upon which the lien claimants must surely have relied for reimbursement. * * *

"In accordance with the views herein expressed, that part of the judgment appealed from which declares the trust deed executed and delivered to the Anglo-California Trust Company as trustee for the Anglo-California Securities Company to be a first charge or lien upon the real property described therein, is hereby affirmed. That part of the judgment awarding the sum of $4,090, remaining undisbursed in the building loan account, to the plaintiff Mary H. Smith, as administratrix of the estate of Calvin M. Smith, deceased, is reversed, with directions to the court below to proceed, as suggested herein, so as ultimately to cause said sum of $4,090 to be applied in liquidation of the liens of the appealing lien claimants."

It is our opinion that it is but realistic to say that laborers and materialmen who contribute their skills and wares to the fashioning of an improvement on land which is incumbered by a first mortgage in favor of a lending institution, especially where the mortgage at the time of recording refers to improvements thereafter to be constructed and the land is vacant and the amount of the mortgage far exceeds the value of the land as of the time of recording, rely upon the lender and the money to be advanced by the lender rather than relying upon the owner for payment. In the 1964 California Supreme Court decision of A–1 Door and Materials Co. v. Fresno Guarantee Savings & Loan Association, reported in 61 Cal.2d 728, 40 Cal.Rptr. at page 85, 394 P.2d at page 829, the California Supreme Court states that:

"An equitable lien may be imposed on a construction-loan fund only if it is established that the borrower or lender induced the supplier of labor or materials to rely on the fund for payment. (Citing cases) There is no evidence in the record of any reliance on the loan funds or of any inducement so to rely. Nor is there any evidence from which reliance may reasonably be inferred. (Compare

Smith v. Anglo-California Trust Co., supra, 205 Cal. at 502–503, 271 P. 898.)"

This requirement does not appear in the California case of Smith. Nevertheless in the case at bar, the appellants have met the test in A–1 Door, at least insofar as the test applies to the plaintiffs' motions for summary judgment.

It is urged that the lender has no way of protecting itself in situations similar to those presented to us. We agree with the following statement contained in a U.C.L.A. Law Review Article entitled "Real Property: Construction Financing", found in Volume 12 at page 1246 of that University's Law Review particularly the statement on pages 1252 and 1253 wherein the author stated:

"Of all the parties involved in new construction, the lender is probably the best able to insure that the project is adequately financed and supervised."

We hold that under the circumstances in this case Davis as the subcontractor doing the plumbing work and Pioneer as the supplier, each have an equitable lien against the undisbursed construction loan funds not to exceed the reasonable value of their services and materials in relation to each lot. In our opinion, the A–1 Door requirement that the laborer or the materialman establish that he relied on the assurance of the borrower that the payment would be made out of loaned funds, the disbursement of which was beyond the control of the borrower, is unrealistic. We do not adopt this principle as a necessary prerequisite to an equitable lien.

We hold that it was error to grant the plaintiff's motion for summary judgment. We do not rule upon the validity of the motions for summary judgment filed by the appellants.

This cause is reversed for further proceedings consistent with this opinion.

DONOFRIO, J., concurs.

ROBERT O. ROYLSTON, Superior Court Judge (dissenting).

I dissent. However sympathetic to the statutory lienholder we may be, I believe that through semantics the majority is indulging in judicial legislation.

Our Supreme Court considered an almost identical factual situation in Irwin, discussed in the majority opinion. In that case, the claimant who had furnished labor and material contended that he should recover as a "third-party creditor-beneficiary"; in the present case, the lien-holder contends that he should recover as the "holder of an equitable lien". Persons in identical factual situations in civil cases should fare the same in court regardless of the label supplied by the lawyers. Under the majority opinion, the litigant using the "third-party creditor-beneficiary" label would fall within the reasoning of Irwin and his claim would be defeated; whereas, the lawyer who is currently informed on our swiftly changing law would label his litigant as a "holder of an equitable lien" and emerge victorious. If the majority opinion intends to overrule Irwin, it should so state.

The majority holds that under circumstances similar to those here, the laborers and materialmen "rely upon the lender and moneys to be advanced by the lender rather than relying upon the owner for payment". This is undoubtedly true, but whether that reliance invests a legal right is another matter. Our Supreme Court stated in Moeur as follows:

"* * * It is the law that a promise or agreement to pay out of a particular fund does not give to the promisee an equitable assignment or a lien upon such fund * * *." (citing cases) 35 Ariz. at page 138, 274 P. at page 1045.

If a specific promise or agreement does not create an equitable lien, it is difficult to conceive that the mere reliance on the existence of the fund without any promise or agreement on the part of the lender of the fund will create the lien. The majority opinion does not discuss the Moeur case. If it is the intention to overrule this case, the opinion should so state.

The case of Smith v. Anglo-California Trust Co., cited with extensive quotation in the majority opinion, was decided in 1928. The factual situation was greatly different from the present situation. The dispute was between the personal representative of the owner-builder and the mechanic's lien claimants over the right to the undisbursed construction loan proceeds. Unlike the present case, the houses were completed in substantial compliance with the plans and specifications submitted with the application for the loan and the lender did not claim an interest in the fund. It clearly owed the money to some party, for the work on the houses had been completed. The only question before the Court was whether the lender should pay the undisbursed proceeds to the builder or to the mechanic's lien claimants. The Court held that the lien claimants had equitable liens on the undisbursed proceeds and were entitled to the proceeds as against the borrower or his successor in interest.

The other California case cited and relied upon by the majority, A-1 Door v. Fresno Guarantee, finds "that the evidence does not support the finding that the mechanic's lien claimants were entitled to equitable liens on the loan funds". (40 Cal. Rptr. page 88, 394 P.2d page 832). By way of dictum, the Court went on to state that an equitable lien arises if the borrower or lender represents to the claimant that the claimant will be paid out of the proceeds of the loan and cites Smith as authority. As previously stated, Smith was a dispute between borrower and lien-holder. To this date, not even California has held that the borrower may induce the supplier of labor or materials to rely on the fund for payment and thereby create an equitable lien for the supplier which is prior to the lender's interest.

To create this right for laborers and materialmen, which is far greater than that

presently in effect by statute, should be a matter for the Legislature rather than the Courts.

For the foregoing reasons, I respectfully dissent.

NOTE: Judge JAMES DUKE CAMERON having requested that he be relieved from the consideration of this matter, Judge ROBERT O. ROYLSTON was called to sit in his stead and participate in the determination of this cause.