428 P.2d 115

PIONEER PLUMBING SUPPLY COMPANY, an Arizona corporation, and H. E. Davis, dba Rural Plumbing Company, et al., Appellants,

v.

SOUTHWEST SAVINGS AND LOAN ASSOCIATION, an Arizona corporation, Appellee.

No. 8833–PR.

Supreme Court of Arizona.

In Banc.

May 17, 1967.

Spector & Johnson, by Richard E. Johnson and William J. Samuels, Pasquale R. Cheche, Phoenix, for appellants.

Lewis, Roca, Scoville, Beauchamp & Linton, by John P. Frank and Gerald K. Smith, Phoenix, for appellee.

Evans & Kunz, by Jack E. Evans, Donald J. Kenney, and Donald R. Kunz, Kramer, Roche, Burch, Streich & Cracchiolo, by Thomas J. Lang and Dan M. Durrant, Gust, Rosenfeld & Divelbess, Ryley, Carlock & Ralston, Carson, Messinger, Elliott, Laughlin & Ragan, Dow Ben Roush, Phoenix, Rees, Estes & Browning, Tucson, Frank E. Howard, Kingman, Holesapple, Conner, Jones, McFall & Johnson, Johnson, Darrow, D'Antonio, Hayes & Morales, Tucson, W. Shelley Richey, Douglas, Boyle, Bilby, Thompson & Shoenhair, Tucson, James F. Haythornewhite, Nogales, Jennings, Strouss, Salmon & Trask, McKesson, Renaud, Cook & Miller, Phoenix, Fickett & Dunipace, Tucson, Evans, Kitchel & Jenckes, Fennemore, Craig, Allen & McClennen, Lutfy & Brennan, by Richard R. Brennan, Phoenix, for amicus curiae.

McFARLAND, Vice Chief Justice:

Plaintiff Southwest Savings and Loan Association, hereinafter designated Southwest, brought an action to foreclose certain mortgages attached to notes upon which a corporation, Mr. W. and Mr. R. Developers, Inc., hereinafter designated as W. & R., was in default. Included among the defendants were certain suppliers, two of whom brought this appeal. Defendants Rural Plumbing Company, hereinafter designated as Rural, and Pioneer Plumbing Supply Company, hereinafter designated as Pioneer, as well as plaintiff Southwest, all moved for summary judgment. None of the facts are in dispute and the only ques-

tion is whether the court erred in allowing Southwest to apply undisbursed construction loan funds to monies due it from W. & R., or, as Rural and Pioneer contend, should they have priority through an equitable lien on such portion of each fund to cover as much of the construction debts due on each building as is in the applicable fund. The Superior Court granted Southwest's motion and entered judgment accordingly. Rural and Pioneer appealed this decision to Division One of the Court of Appeals, and in 3 Ariz.App. 495, 415 P.2d 893, the decision of the lower court was reversed. From this decision we granted review.

Southwest and W. & R., entered into separate construction and loan agreements for each of thirty-six separate mortgages on lots and houses to be built thereon. The amount to be loaned on each home was specifically provided for in each of the mortgages and in the construction loans. The construction loan also provided that such amount be disbursed by Southwest to the Union Title Company as escrow agent periodically as certain phases of the construction were satisfactorily completed. Rural was employed by W. & R., and did the plumbing work on all thirty-six houses. Pioneer supplied the materials which Rural used on these houses, and both parties allege through uncontradicted affidavits that they relied on representations made by officers of W. & R. that they would be paid out of the construction loan funds for their services and materials. The construction loan contract specifically set out that in case of W. & R.'s default, Southwest was entitled to the undisbursed loan funds to offset its losses. These same contracts further provided that they were for the sole protection of W. & R. and not for the benefit of third parties. Without notice to anyone, W. & R. abandoned construction and stopped making payments on the notes. Pioneer and Rural filed timely mechanics' and materialmen's liens on the lots. Southwest treated the abandonment as a default on the mortgages and brought suit to foreclose the mortgages.

Both Rural and Pioneer counter-claimed, requesting that the mortgages not be foreclosed in the manner that Southwest requested, but that Rural and Pioneer should be entitled to an equitable lien to satisfy their claim against each lot, and that Southwest should only receive such monies in the construction loan funds which exceeded the amounts claimed by counter-claimants on the respective lots.

Rural and Pioneer as well as Southwest moved for summary judgments. Southwest's motion was granted, and the counter-claims denied. The Superior Court held that, as a matter of law, defendants Rural and Pioneer were not entitled to an equitable lien on the undisbursed construction loan funds. Rural and Pioneer appeal from this decision. There have been three actions filed concerning the foreclosure of the 36 lots. The parties stipulate that the only distinction between these actions and the question to be resolved in each action is the properties involved. By their stipulation it was ordered that Cause 165913, Cause 165914, and Cause 166228 be consolidated into one action designated as Cause 165913.

Rural and Pioneer admit that A.R.S. § 33–981 creates nothing more than a statutory lien, and by the Arizona law of priorities they are not entitled to a legal lien prior to the mortgages of Southwest. Their claim is based solely on the question of whether they are entitled to an equitable lien on the undisbursed construction loan funds, and if so, is this equitable lien a prior right over mortgagee Southwest's right to these same funds. Pioneer and Rural did not oppose a determination by the Court that plaintiff's mortgage liens be declared valid and existing first liens on the real property involved. There is no issue in regard to the finding of the court that W. & R. were in default in the notes and mortgages, nor was any appeal made from the foreclosure of Southwest's mortgage liens. Rural and Pioneer admit Southwest was entitled to foreclosure of its mortgage lien and that it had a priority over

the lien for construction completed and not paid for.

In Irwin v. Murphey, 81 Ariz. 148, 302 P.2d 534, the plaintiff brought suit to foreclose his mortgage and determine the rights of party defendants claiming mechanics' liens on the mortgage property. Irwin, among others, in his capacity as one of the lien claimants, contended that he was a creditor beneficiary of a construction agreement between the owner and the lender, and as such was entitled to recover from the lender under the terms of the agreement by which the lender-mortgagee agreed to advance funds for the construction of a dwelling house on property in accordance with a schedule similar to that of the instant case. The mortgagor has exceeded the note and mortgage in question and abandoned the construction.

We stated that this court "has adopted the rule that the intent must be indicated in the contract itself." We further said:

"Our latest pronouncement on this subject was made in the case of Seargeant v. Commerce Loan and Inv. Co., 77 Ariz. 299, 270 P.2d 1086, 1089, in which we said:

'* * * There must be manifested in the language of the contract an intent on the part of Seargeant to assume and discharge O'Brien's obligation to the Loan Company. The promise of Seargeant to O'Brien must in effect be to pay to the Loan Company the $10,000 in order for the agreement to entitle the Loan Company to maintain a cause of action against Seargeant upon a third-party beneficiary contract. In legal effect the agreement must be such as to bind Seargeant to discharge O'Brien's obligation to the Loan Company.'

"The rule is stare decisis in this jurisdiction." (Citations omitted)

\* \* \* \* \* \*

"On its face the contract merely provides for a proposed loan to finance the construction of a dwelling house on designated land. The funds were to be paid out according to a construction schedule and certification by an architect. The entire amount under the agreement could have been paid direct to the Lukes. Some of it was. To find that appellant Irwin was the direct and intentional beneficiary of this agreement, without supporting facts, would be to alter or add to or change the written contract of the parties. Under the law as laid down by this court and which we feel is stare decisis, it definitely must appear that the parties intend to recognize the third party as the primary party in interest and, as privy to the promise, in order for the third party to recover. * * *" 81 Ariz. at 153, 154; 302 P.2d at 537, 538

Rural and Pioneer cite us to two California decisions which they feel this court should follow in deciding the instant case. In Smith v. Anglo-California Trust Co., et al., 205 Cal. 496, 271 P. 898, there was approximately $4,000.00 left in undisbursed construction loan funds, and over $5,000 in claims of mechanics and materialmen. The construction had been completed, and the lender did not assert any right to the funds. The court stated that the lender's recorded interest in that case was prior to all other interests, and the lender was under no liability to perform as some sort of trustee to protect the mechanics' and materialmen's interests. But the court did find that, as between the borrower (represented in this action by his personal representative) and the mechanics and materialmen, the mechanics and materialmen did rely on this fund for payment of their charges for construction and the principles of equitable estoppel make the lien claimants' rights in the undisbursed monies superior to the rights of the borrower. The court in ruling upon this question held:

"* * * It is true, of course, that, although the loan was obtained by Smith for the express purpose of improving the property according to plans and specifications submitted with the application therefor, there is nothing in the nature of the agreement, or in its terms, that made it obligatory upon the securities

company to see that the money advanced thereunder was, in fact, applied to payments for labor and materials furnished in the construction work. Hence, any payments made to or on behalf of Smith were in discharge of the agreement of the securities company and brought it under no liability to the lien claimants. It follows, therefore, that the right, if there be such right, to have the sum of $4,090 applied pro tanto in payment of the mechanics' lien claims cannot be enforced by virtue of any declared trust or one to be implied from the terms and conditions of the loan agreement. This conclusion necessarily flows from the proposition, just stated, that the securities company was under no obligation by virtue of its contract or agreement to see to the application of the money advanced.

"Nor do we think the lien claimants can assert such right solely by virtue of the agreement of the securities company to advance the full sum of $20,000, for it is now well settled in this state that to give a third party, who may derive a benefit from the performance of a promise, an action thereon, there must have been an intent clearly manifested by the promisor to secure some benefit to the third party. In other words, the promise or contract must have been one 'made expressly for the benefit of a third person.' Section 1559, Civ.Code, 6 Cal.Jur. 473, § 280, and authorities there cited.

"What we have said, however, need not necessarily prove fatal to the cause of the appealing mechanics' lien claimants if there exist any special circumstances warranting the imposition in their favor of a charge or lien upon the fund now in dispute. We are of the view that the money remaining undisbursed in the building loan account opened in Smith's name by the securities company should, in accordance with established principles of equity, be so charged. And this by reason of those special circumstances and conditions consisting of representations and conduct upon one side and of action founded thereon upon the other. * * *" Smith v. Anglo-Calif. Trust Co., 271 P. at 901

The court found those special circumstances which were present in that case and which justified equitable relief to be: that the lien claimants must have relied on the fund and not on the individual capacity of Smith or their right to a last lien on the premises; that Smith could not have built without the loan fund; that the loan could not have been obtained without giving the deed of trust for its security priority over the purchase-money deeds of trust; that the houses were completed in substantial compliance with the agreements; that the securities company and Smith must have reasonably expected the loan fund agreement to materially induce the lien claimants to supply labor and materials, and that they would rely on the fund; that it would be inequitable or unjust to allow Smith or his personal representative to withhold the fund.

It will be noted that the facts in the Smith case and in the instant case are altogether different. In the Smith case the house had been completed—the lender-mortgagee claimed no part of the funds. The decision lends support to Southwest's position rather than the contention of Rural and Pioneer. The construction loan agreement in the instant case specifically provided that:

"* * * Owner and (where applicable) Contractor further agree that no materials, fixtures, or any other part of said improvements shall be purchased or installed under conditional sales agreements or under any other arrangements wherein the right is reserved or accrues to anyone to remove or to repossess any such items, or to consider them as personal property.

* * * * * *

"5. *Assignment of Account.* Subject to the provisions of this agreement, the Owner hereby irrevocably assigns to the Association as security for the note and the performance of this agreement all of

the right, title and interest of the Owner in and to said account and all moneys to be transferred thereto and placed therein. The Owner has no right to the moneys in said account except to have them disbursed by the Association in accordance with this agreement, which disbursement the Association agrees to make upon the conditions and in the manner herein provided. The Owner agrees that except as hereinabove provided, any assignment or transfer, voluntary or involuntary, of this agreement or any rights hereunder, shall not be binding upon or in any way affect the Association without its written consent and the Association may pay out moneys in said account as provided herein, notwithstanding any such assignment or transfer."

\*    \*    \*    \*    \*    \*

"F. The Association shall have no obligation to require or obtain lien waivers or receipts and even if it requires presentation to it of lien waivers or receipts it shall have no responsibility for the validity thereof nor for the correctness of the amounts thereof. The Association shall have no obligation to see that the payments made by it to those designated herein by the undersigned are actually used by said designees to pay for labor and materials furnished and used in the construction of the subject improvements. Owner understands that these are his responsibilities and Owner assumes all risks in connection therewith.

"G. Anything to the contrary herein notwithstanding, upon receipt by the Association from Owner of written instructions not to make any further disbursements to Contractor, the Association shall cease to make further disbursements hereunder to Contractor until authorized to do so in writing by Owner. The Association shall have no liability or obligation to Contractor to make disbursements in accordance with the terms and provisions of this agreement, the relationship of the Contractor being ex-clusively with the Owner and not with the Association."

The construction loan agreement also states:

"17. This agreement is made for the sole protection of the undersigned and the Association and no other person or persons shall have any right of action hereon."

To hold that Southwest had any duty to pay funds to Pioneer or Rural, or that Pioneer or Rural had a lien upon funds which the agreement expressly provided would go toward the reduction of the face of the mortgage, would be an alteration of the written agreement.

Rural and Pioneer cite A-1 Door & Materials Co. v. Fresno Guar. S. & L. Assn., 40 Cal.Rptr. 85, 394 P.2d 829, as the case which expands the doctrine of the Smith case and should be followed in the instant case. In A-1 Door the court allowed materialmen and mechanics to collect out of undisbursed construction funds prior to defendant lender. This holding was based on a California statute which the court interpreted to preclude the binding effect of any contractual provision between the lender and borrower which gives the lender undisputed priority to any undisbursed funds. The court in the A-1 Door case never discussed the issue of statutory priority, and it specifically disallowed the priority of mechanics' lien claimants who had not filed under the special "stop-notice" statute. This case allowed recovery based on a statute which Arizona does not have. It also decided that plaintiffs who based their rights on a mechanics' lien, as do Rural and Pioneer, did not have a priority over the lender. A footnote in A-1 Door reads:

"1. Section 1190.1, subsection (h) provides that any supplier of labor or materials except the general contractor 'in any instance in which the funds with which the cost of the work of improvements are, wholly or in part, to be defrayed from the proceeds of a building loan, [may] give to \* \* \* [any] party holding any funds furnished or to be

furnished by the owner or lender or any other person as a fund from which to pay construction costs or arising out of a construction or building loan, a notice' that he has supplied labor materials of a specified value to the owner. If a bond of a specified amount is filed with the notice of claim, the person given the notice 'must withhold from the borrower or other person to whom said owner may be obligated to make payments or advancements out of said fund sufficient money to answer such claim * * *. No assignment by the owner * * * of construction loan funds, whether made before [or after] a verified claim is filed * * * shall be held to take priority over claims filed under this subsection (h) and such assignment shall have no binding force insofar as the the rights of claimants who file claims hereunder are concerned.'" 394 P.2d at p. 832

Only the "stop-notice" claimants were allowed to recover, and the court said:

"* * * The right to recover on a stop-notice claim, however, 'does not depend upon the establishment of a lien.' * * *" 394 P.2d at p. 832

Rural and Pioneer point out the following dicta from A–1 Door as a proper statement of the law:

"* * * An equitable lien may be imposed on a construction-loan fund only if it is established that the borrower or lender induced the supplier of labor or materials to rely on the fund for payment. (Smith v. Anglo-California Trust Co., 205 Cal. 496, 501–504, 271 P. 898; Pacific Ready Cut Homes v. Title I. & T. Co., 216 Cal. 447, 450–452, 14 P.2d 510.) * * *." 394 P.2d at 832

We read this language as holding the party making the inducement is bound thereby and not that the lender would be bound by representations made solely by the borrower as an inducement for the supplier of labor or materials to rely on the fund for payment. In the Smith case, supra, the borrower was bound where the house had been fully completed and the lender claimed no part of the funds. An analysis of the two cases cited to support the quote does not show that the California Supreme Court intended to create an equitable lien against lenders because of representations or inducements made by the borrowers. As previously stated, the holding in Smith v. Anglo-California Trust Co., supra, merely allowed mechanics and materialmen to have a priority over the borrower, and in Pacific Ready Cut Homes, Inc. v. Title Ins. & Trust Co., et al., 216 Cal. 447, 14 P.2d 510, a materialman's lien was given priority over the lender's interest after it was established that the lender had made affirmative statements to the materialman which induced his performance. That is not the fact in the instant case.

The question then becomes whether the mere creation of a construction loan fund is such an inducement to materialmen and mechanics that they have a right to these funds for payment even where there is a prior recorded interest in the property and the borrower has not complied with the construction loan contract sufficiently to make him entitled to the particular portion of the funds sought.

In Moeur v. Farm Builders Corp., 35 Ariz. 130, 274 P. 1043, this court explained that an agreement to pay out of a particular fund does not create an equitable lien on the fund, or the property from which the fund is obtained. The real question is whether the parties intended that the fund or property upon which the lien is claimed was to be security or collateral for the payment. The use of the remedy of the equitable lien is explained in 53 C.J.S. Liens § 4, at pp. 837, 838, as follows:

"While it is not necessary first to show a lien at law in order to establish an equitable lien, the doctrine of equitable liens is not a limitless remedy to be applied according to the measure of the conscience of the particular chancellor, and does not contemplate expediency as

distinguished from legal rights. An equitable lien must be based on established equitable principles; in all cases the person seeking to establish the lien must show that in equity, in good conscience, he is entitled to the lien claimed; and, where there is no contract out of which the lien could grow, nor any duty on one party to give to the other any charge or lien whatever, no basis for such a lien exists. * * * "

■ Did Southwest, by creating the construction loan fund with W. & R., intend that the fund was to be security for any materials or labor advanced by mechanics or materialmen? The answer is an obvious "No." Southwest created the fund as a security device for its own protection, and not as security or collateral for Rural and Pioneer to rely on. The express terms of the loan fund contracts preclude any such interpretation. Southwest specifically provided that there was to be no construction until after the mortgages were recorded, so Southwest would be assured of attaining priority. The agreement also stated that it was made for the sole protection of the undersigned and no other person or persons should have any right of action thereon.

■ It is clear that the construction loan fund agreements were made for Southwest's protection, and not to secure claims of materialmen and mechanics. This case is not a proper one for the imposition of an equitable lien, for this court can find no intent on Southwest's part to bind the loan funds to any claims that Pioneer or Rural may have and under the doctrines of equity and good conscience cannot hold that the lender is bound by the borrower's representations to third parties. As was pointed out in Utah Savings & Loan Assn. v. Mecham, 12 Utah 2d 335, 366 P.2d 598, before the mechanics lien claimant can defeat the legal priority of a prior recorded mortgage, he must show that the mortgagee did something upon which he had a right to rely, and that he relied thereon to his detriment. In the instant case Southwest's creation of the loan funds did not in itself entitle Rural and Pioneer to rely on these funds for payments for which Southwest never became liable due to W. & R.'s default, and Southwest did nothing else to induce a reliance.

■ Pioneer and Rural contend that it is the policy of Arizona to protect the rights of those who furnish labor and materials to improve property. With this principle we agree; however, those rights must be established under existing law. To have come within the equitable principles set forth in the Smith case it would have been necessary that not only Pioneer and Rural were induced by W. and R. to supply labor and material to each home, but as in Smith v. Anglo-California Trust, Co., supra, it would have been necessary for the building to have been completed and other provisions of the contract of the construction agreement performed by W. and R. Under these circumstances Pioneer and Rural certainly should have had an equitable lien on these funds as against W. and R. They had furnished labor and material which improved the property. However, the inducements of Pioneer and Rural by W. and R. to supply the material and labor are the only facts that come within the equitable principles of law as enunciated in Smith. As far as the A–1 Door case is concerned, there was no inducement by Southwest made to Rural and Pioneer to rely on this mortgage money for their payment. Had such an inducement been made, Rural and Pioneer might have been entitled to an equitable lien as against Southwest, provided the other elements necessary were also proved.

Under the facts of the instant case it is clear that Rural and Pioneer are not entitled to an equitable lien under the principles of either Smith or A–1 Door. Amicus Curiae briefs have been filed both in support of the position of Southwest and of Rural and Pioneer. The importance of the position of each to the economy of the state has been outlined. It was even suggested that this court should set out certain requirements for loan practices. We do

not deem that such would be proper. This is a matter for the Legislature so we do not pass upon the desirability of such provisions. It may well be that the lending agencies in their desire to secure loans, have not in some instances followed good business practices. On the other hand it may well be that labor and material men in order to secure business and work, have furnished labor and material without properly protecting themselves by contract or otherwise. Assuming these conditions exist, it would still be improper for this court to write a set of rules governing construction contracts.

The opinion of the Court of Appeals is vacated, and the judgment of the lower court is affirmed.

STRUCKMEYER, LOCKWOOD and UDALL, JJ., concur.

NOTE: Chief Justice CHARLES C. BERNSTEIN, having disqualified himself, did not participate in the determination of this appeal.