441 P.2d 575

**UNITED PLUMBING, an Arizona corporation, and Glajon Wholesale Co., Appellants,**

v.

**GIBRALTAR SAVINGS AND LOAN ASSOCIATION, a corporation, Appellee.**

**No. I CA–CIV 602.**

Court of Appeals of Arizona.
May 29, 1968.

Lewis, Roca, Beauchamp & Linton, by Gerald K. Smith, Phoenix, for appellee.

HATHAWAY, Chief Judge.

The appellants, United Plumbing (United) and Glajon Wholesale Co. (Glajon), sought to recover on mechanics and materialmen liens against Federal Savings and Loan Insurance Corporation, Gibraltar Savings & Loan Association's receiver in bankruptcy. Gibraltar had held certain funds for the financing of two construction projects undertaken by Morton and Clair Braiker, dba Braiker Construction Company (hereinafter referred to as the Braikers). After making specific findings of fact and conclusions of law the trial court rendered judgment for Gibraltar, hence this appeal.

Viewing the evidence in the light most favorable to support the judgment, the facts are as follows. In the spring of 1963 the Braikers undertook two large construction projects on property generally known as Independence Acres and Whispering Sands. For the financing of this construction the Braikers entered into several building loan agreements with Gibraltar and with the exceptions of the dates and amounts the building loan agreements are identical. The loans were secured by numerous mortgages taken on the lots on which apartment complexes were to be built and by assignments of the proceeds of the loans to Gibraltar to take effect in the event of default.

The funds held by Gibraltar were to be distributed in five 20 percent distributions according to a specific schedule based upon the stage of completion of each construction project. An addendum was added to each agreement providing that the first four construction draws were to be payable jointly to the Braikers and the escrow agent handling the mortgage escrows, either Phoenix Title & Trust Company or Lawyer's Title & Trust Company.

Gibraltar disbursed approximately 80 percent of the total funds from the building loan accounts to the Braikers as per

Lutfy & Brennan, by Richard R. Brennan, Phoenix, for appellants.

the agreements. Approximately one fourth of the disbursed funds were used for the purchase of the lots upon which the improvements were ultimately constructed.

The Braikers furnished Gibraltar with a financial statement showing the Braikers' substantial financial worth. Apparently, Gibraltar did not investigate the Braikers' actual financial worth and questionable financial background since the sole proceeds with which the Braikers, who had twice previously filed in bankruptcy, intended to finance the construction and purchase the lots consisted of the loan proceeds with Gibraltar.

After substantial completion of the construction on the two projects and the first four draws from the loan account were made, the Braikers' financial difficulties became evident and they were ultimately forced into bankruptcy.

The appellants filed mechanics and materialmen liens against the property and the remaining work to be done on the projects halted. Gibraltar declared a default, accelerated its loans, applied the undisbursed loan proceeds to each particular loan and foreclosed on its mortgages. The trustee in bankruptcy for the Braikers sold the property on which the projects were being constructed free and clear of all mechanics and materialmen liens after its determination that the mortgage held by Gibraltar was a superior lien. Gibraltar entered into an agreement with the purchaser of these properties at the bankruptcy sale whereby the remaining undisbursed loan proceeds, plus additional funds were provided by Gibraltar for the completion of the projects. Thereafter, on November 6, 1964, the appellants filed pleadings with the trial court asserting their claims against Gibraltar for the remaining sums due them on the projects. The trial court found in favor of Gibraltar and the appellants have appealed therefrom.

The questions presented on appeal are:

1. Whether the appellants were entitled to an equitable lien on the undisbursed loan proceeds held by Gibraltar.

2. Whether the agreement between the Braikers and Gibraltar that Gibraltar will hold the loan proceeds disbursed to it in trust for the payment of mechanics and materialmen created a trust enforceable by the appellants, when in the same agreement the parties thereto have provided that the agreement is for the sole benefit of the parties and it is not intended to benefit any third persons.

3. Whether the appellants were third party beneficiaries of the agreement between the Braikers and Gibraltar.

In asserting their equitable lien doctrine the appellants rely heavily upon Pioneer Plumbing Supply Co. v. Southwest Savings and Loan Association, 3 Ariz.App. 495, 415 P.2d 893 (1966). The appellate court, however, in *Pioneer* was recently vacated by the Arizona Supreme Court in 102 Ariz. 258, 428 P.2d 115 (1967). There, dealing with a similar fact situation, our Supreme Court stated:

"To hold that Southwest had any duty to pay funds to Pioneer or Rural, or that Pioneer or Rural had a lien upon funds which the agreement expressly provided would go toward the reduction of the face of the mortgage, would be an alteration of the written agreement." 428 P. 2d at 120.

That principle equally applies to the appellants' claims here.

However, in *Pioneer* our Supreme Court did not foreclose the idea of the application of the equitable lien doctrine under the proper circumstances. The court said:

"* * * before the mechanics lien claimant can defeat the legal priority of a prior recorded mortgage, he must show that the mortgagee did something upon which he had a right to rely, and that he relied thereon to his detriment. In the instant case Southwest's creation of the loan funds did not in itself entitle Rural and Pioneer to rely on these funds for payments for which Southwest never became liable due to W. & R.'s default,

and Southwest did nothing else to induce a reliance." 428 P.2d at 122.

We have searched the record and find substantial evidence to support the trial court's findings that Gibraltar made no representations to either of the appellants prior to the beginning of construction that would have allowed them to reasonably rely upon Gibraltar for payment to them for materials and time expended. Although prior to initiating construction Gibraltar's representatives talked to both of the appellants and related that Gibraltar was financing the Braikers, there is undisputed testimony that Gibraltar refused, as requested by appellants prior to construction, to disburse the loan funds payable jointly to the appellants and the Braikers. In light of this refusal and the agreement between Gibraltar and the Braikers, it is clear that neither of the appellants could or should have reasonably relied upon Gibraltar for payment.

The appellants base their next contention upon paragraph 5(b) of the loan agreements between Gibraltar and the Braikers. That paragraph in pertinent part states:

"The undersigned, and each of them, agree that all the funds received hereunder are received in trust for the purpose of paying in full all contractors and/or materialmen and/or laborers (other than the undersigned) then or thereafter engaged in said construction; and that the undersigned shall not have any beneficial interest in said funds unless and until said purpose has been fulfilled."

The appellants claim that the above provision created a trust of the undisbursed loan funds with Gibraltar as trustee for the benefit of the mechanics and materialmen. However, the appellants' contention seems still to deal with the doctrine of equitable lien since "the real question is whether the parties intended that the fund or property upon which the lien is claimed was to be security or collateral for the payment." Pioneer Plumbing Supply Co. v. Southwest Savings and Loan Association, supra, 428 P.2d at 121.

Our Supreme Court in *Pioneer* answered a similar contention thusly:

"Did Southwest, by creating the construction loan fund with W. & R., intend that the fund was to be security for any materials or labor advanced by mechanics or materialmen? The answer is an obvious 'No.' Southwest created the fund as a security device for its own protection, and not as security or collateral for Rural and Pioneer to rely on. The express terms of the loan fund contracts preclude any such interpretation. Southwest specifically provided that there was to be no construction until after the mortgages were recorded, so Southwest would be assured of attaining priority. The agreement also stated that it was made for the sole protection of the undersigned and no other person or persons should have any right of action thereon." 428 P.2d at 122.

The above language fully answers the contentions made by the appellants since identical provisions as in the above-quoted paragraph from the *Pioneer* case are also contained in the loan agreements between Gibraltar and the Braikers. It seems from the reading of the entire agreement that the purpose of paragraph 5(b) was to provide Gibraltar additional security, so that upon disbursement of the loan funds to the Braikers, the Braikers would have a contractual obligation to apply those disbursed funds to the cost of labor and materials used in the construction rather than used for some other purpose and thereby impairing Gibraltar's security. It follows, therefore, that as long as the funds remained undisbursed and in the building and loan account paragraph 5(b) would be inapplicable.

The appellants' third party beneficiary contention is amply answered by Irwin v. Murphey, 81 Ariz. 148, 302 P.2d 534 (1956). Our Supreme Court in that case, again under very similar facts, held that before a third party could be found to be a

creditor-beneficiary of the construction agreement between the owner and the lender it must be shown from the agreement and the surrounding facts that the lender intended to assume the obligations of the owner to the third parties' subcontractors. In the instant case, as in *Irwin*, there are no supporting facts which would show that Gibraltar in any way intended to benefit the appellants by its agreement with the Braikers. Paragraph 11[1] of the agreement specifically refutes any such intention on the part of Gibraltar. The following language from *Irwin* is applicable to the instant case:

"To find that appellant Irwin was the direct and intentional beneficiary of this agreement, without supporting facts, would be to alter or add to or change the written contract of the parties. Under the law as laid down by this court and which we feel is stare decisis, it definitely must appear that the parties intend to recognize the third party as the primary party in interest and, as privy to the promise, in order for the third party to recover." 81 Ariz. at 154, 302 P.2d at 538.

Appellants next contend that Gibraltar has been unjustly enriched. After searching the record we find no evidence whatever presented to the trial court that would in any way refute that court's finding of fact that Gibraltar used the undisbursed loan funds to satisfy its existing mortgages and that they were disbursed to the new purchaser and borrower from Gibraltar to be used to complete the construction projects.

The appellants lastly contend that Gibraltar acted negligently in disbursing the monies to the Braikers since the Braikers used some of the funds to purchase the real property lots upon which the construction was to take place. Although Gibraltar perhaps should have acted with more discretion and should have devoted more time to its investigation of the Braikers and the lots, the findings of the trial court that no evidence was introduced tending to show that Gibraltar knew or should have known of the Braikers' insufficient financial status are fully substantiated in the record.

For the foregoing reasons the judgment is affirmed.

MOLLOY and KRUCKER, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

1. "This agreement is made for the sole protection of the undersigned, and the said *Association*, its successors and assigns, and no other person or persons shall have any right of action hereon."