NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

HENDRIX PROPERTIES, LLC, *Plaintiff/Counterdefendant/Appellee,*

*v.*

DJL AZ INVESTMENTS, LLC, *Defendant/Counterclaimant/Appellant.*

No. 1 CA-CV 25-0830

FILED 06-10-2026

Appeal from the Superior Court in Mohave County
No. S8015CV202301923
The Honorable Eric Gordon, Judge

**AFFIRMED**

COUNSEL

Lang Thal King & Hanson, PC, Scottsdale
By George H. King, Max H. Beall
*Counsel for Plaintiff/Counterdefendant/Appellee*

Tyson & Mendes, LLP, Scottsdale
By Lynn M. Allen, Alexander Alvarnas
*Counsel for Defendant/Counterclaimant/Appellant*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Daniel J. Kiley and Judge D. Steven Williams joined.

---

**B A I L E Y**, Judge:

¶1　　　　This is a commercial lender's appeal from summary judgment for the borrower on the borrower's breach of contract claim and the lender's fraud counterclaim.  The undisputed facts show that the lender improperly retained loaned funds and failed to timely assert its counterclaim.  We therefore affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2　　　　In 2016, Laurin and Kimberly Hendrix acquired real property ("the Property") in Bullhead City subject to a deed of trust held by Arena LLC ("Arena").  In 2017, with Arena's consent, the Hendrixes agreed with the City to subject the Property to twenty-two years of biannually levied assessments, totaling about $2.5 million (interest included), for the Laughlin Ranch Boulevard Improvement District ("LRBID").   The agreement obligated any subsequent Property owner to pay the assessments as they came due.

¶3　　　　In 2018, a real estate agent began working with Donald Laughlin, owner of the Riverside Resort and Casino ("Riverside"), to obtain a loan for the Hendrixes to pay off Arena.  Several Riverside employees became involved in the transaction, including chief operating officer Matthew Laughlin and executive director Malibu Diaz.  A lender entity, DJL AZ Investments LLC ("DJL Investments"), was formed to facilitate the loan.  The Donald J. Laughlin Family Trust, managed by Donald and Matthew Laughlin, was DJL Investments' sole member.  For their part, the Hendrixes transferred the Property to their entity Hendrix Properties LLC ("Hendrix Properties").

¶4　　　　During the loan negotiations, the Hendrixes directed Chicago Title Insurance Company ("Chicago Title") to provide a title report, which listed the Bullhead City Parkway Improvement District as an exception but did not mention the LRBID.  The parties dispute whether other information exchanged during the negotiations nonetheless put DJL Investments on

notice of the LRBID agreement, and whether Hendrix Properties' representatives lied about the encumbrance by omission or otherwise.

¶5 Ultimately, in December 2018, DJL Investments made Hendrix Properties a $1.55 million non-recourse loan secured by a deed of trust on the Property. The promissory note provided that DJL Investments would "hold back $138,912.76 from the loan amount to be held in [DJL Investments'] impound account for the payment of the real estate taxes and the improvement district fees during the term of the note," with Hendrix Properties to "submit invoices for the real estate taxes and the improvement district fees to [DJL Investments]" for DJL Investments to pay "directly to the appropriate municipality on behalf of [Hendrix Properties]." (Cleaned up.) The note specified that Hendrix Properties was to repay the $1.55 million loan, plus interest, via four interest installments in 2019 followed by a balloon payment in 2020. The note included an acceleration clause providing that the entire repayment amount would come due immediately upon Hendrix Properties' failure to make a scheduled payment.

¶6 Consistent with the promissory note, DJL Investments opened a commercial checking account and deposited $138,912.76 in February 2019. Several months later, in May 2019, Laurin Hendrix emailed Diaz a $27,745.81 invoice from the City. Hendrix wrote that the invoice, which itself referenced "LAUGHLIN RANCH IMPROVEMENT DIST.," was "the invoice for the improvement district on Section 7" for which "[t]he funds were impounded and held by lender as part of loan agreement."

¶7 Diaz forwarded Hendrix's email to Matthew Laughlin and the two summarily agreed that it had nothing to do with them. Nonetheless, Frank Tokas, Riverside's director of finance and the person responsible for paying taxes and assessments on the Property, endorsed a check to the City to pay the invoice. He used a "D.J. Laughlin" account (not the DJL Investments account) and although Diaz countersigned the check, she did not realize it was for Hendrix's invoice (which she had not provided to Tokas). Tokas died before he could be asked how he obtained the invoice and why he signed the check.

¶8 In June 2019, Hendrix Properties failed to pay an interest installment when it came due. Based on that default, the parties agreed in July 2019 to a deed in lieu of foreclosure under which DJL Investments received the Property subject to taxes and assessments, and Hendrix Properties received a release from liability on the promissory note plus $5,000. The deed in lieu of foreclosure made no reference to the impounded loan funds or to the LRBID.

**¶9**        Nearly two years passed.   Then, in June 2021, a City representative called Diaz and informed her that past-due LRBID assessments were owed on the Property.  The representative explained that the City had been invoicing Hendrix Properties for the assessments but then independently learned of DJL Investments' ownership.  Diaz relayed this information to Matthew Laughlin, investigated the City's claim, and discovered the LRBID agreement.  In February 2022, DJL Investments paid the nearly $300,000 in past-due LRBID assessments.

**¶10**        DJL Investments sued Chicago Title for breach of contract and the covenant of good faith, and Chicago Title brought a third-party complaint against the Hendrixes.   DJL Investments and Chicago Title ultimately settled for $1.55 million.

**¶11**        In December 2023, Hendrix Properties brought this action against DJL Investments.   Asserting claims for conversion, breach of fiduciary duty, and breach of contract, Hendrix Properties alleged that DJL Investments unlawfully retained impounded loan funds.  DJL Investments asserted a counterclaim for fraud based on the acts and omissions of Hendrix Properties' representatives during the loan negotiations.

**¶12**        The superior court granted summary judgment for DJL Investments on limitations grounds as to Hendrix Properties' conversion and fiduciary-duty claims.  Hendrix Properties then moved for summary judgment on its contract claim as well as on DJL Investments' counterclaim. After oral argument, the superior court granted Hendrix Properties' summary-judgment requests.  The court entered judgment for Hendrix Properties in the amount of $111,166.95 (the original impound amount minus the May 2019 payment), plus pre-judgment interest dating from July 2019, post-judgment interest, and attorneys' fees and costs.

**¶13**        DJL Investments timely appealed.   We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(1).

## DISCUSSION

**¶14**        Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a).  A plaintiff who moves for summary judgment on its claim must show not only the absence of a genuine dispute of material fact, but also that the undisputed admissible evidence compels findings in the plaintiff's favor on each element of the claim. *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶¶ 16-18 (App. 2012).

¶15         We review the grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). We also review questions of contract interpretation de novo, *id.*, giving effect to plain contractual language as the best indicator of the parties' intent, *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009). We will affirm if the superior court's ruling is correct for any reason. *Glaze v. Marcus*, 151 Ariz. 538, 540 (App. 1986).

    I.         Hendrix Properties was entitled to summary judgment on its breach of contract claim.

¶16         DJL Investments first contends that genuine disputes of material fact precluded summary judgment on Hendrix Properties' breach of contract claim. We disagree. To prevail on summary judgment, Hendrix Properties had to show undisputed evidence of a contract, its breach, and damages. *See Wells Fargo Bank*, 231 Ariz. at 213, ¶¶ 16-18; *Graham v. Asbury*, 112 Ariz. 184, 185 (1975). Hendrix Properties met that burden.

¶17         Under the parties' promissory note, DJL Investments "promise[d] to pay" Hendrix Properties $1.55 million dollars but "hold back $138,912.76 from the loan amount" in an "impound account for the payment of the real estate taxes and the improvement district fees during the term of the note" on Hendrix Properties' "behalf." (Cleaned up.) In return, Hendrix Properties promised to repay the full loan amount—including the impounded portion—plus interest. In accord with the note, and as DJL Investments itself asserted in connection with its motion for summary judgment, the impounded funds were disbursed to DJL Investments and deposited in a dedicated account. But although DJL Investments controlled the funds, they were part of the loan given to Hendrix Properties, to be used by DJL Investments solely to protect the loan security during the loan's duration by ensuring Hendrix Properties' payment of all tax and improvement district obligations. The fact that the funds were placed in a holding account rather than given directly to the borrower did not alter the fact that they were part of the loan under the parties' agreement.

¶18         Under the plain language of the note, DJL Investments was required to use the impounded funds only to pay taxes and improvement district fees, and only "during the term of the note." DJL Investments met

that obligation when it paid one of the LRBID assessments.[1]  But after Hendrix Properties defaulted, the parties ended their obligations under the note by entering the deed in lieu of foreclosure, which made no mention of the impounded funds or any improvement-district obligations.  By the deed, Hendrix Properties' duty to repay the loan proceeds ended and so did DJL Investments' authority to control the impounded portion thereof.

¶19     DJL Investments argues that a reasonable factfinder could conclude that the note's acceleration clause permitted DJL Investments to retain the impounded funds upon Hendrix Properties' default.[2]  But nothing in the acceleration clause allowed DJL Investments to unilaterally collect by retaining loaned funds it held on Hendrix Properties' behalf. Further, because the loan was non-recourse and unaccompanied by any guaranty, DJL Investments was limited to executing on the Property.  *See Provident Nat'l Assur. Co. v. Sbrocca*, 180 Ariz. 464, 467 (App. 1994).

¶20     DJL Investments relies on *Pioneer Plumbing Supply Co. v. Southwest Savings & Loan Ass'n*, 102 Ariz. 258 (App. 1967).  But *Pioneer Plumbing* is distinguishable.  In *Pioneer Plumbing*, the parties specifically agreed that a construction loan would be disbursed in installments contingent on construction progress, and that the lender could keep "the undisbursed loan funds to offset its losses" if the borrower defaulted.  *Id.* at 260.  Here, by contrast, the impounded funds were part of the loan made at the outset, without qualification.  Further, the parties nowhere agreed, in either the note or in the deed in lieu of foreclosure, that the impounded funds could revert to DJL Investments to offset default damages.

¶21     Once the deed in lieu of foreclosure ended the parties' obligations under the note, DJL Investments had no ongoing contractual authority to control the loan proceeds.  The superior court correctly entered summary judgment for Hendrix Properties on its breach of contract claim.

---

[1] Hendrix Properties does not dispute that the assessment payment, made by Riverside employees from a non-DJL Investments account, should be credited to DJL Investments as a payment from the impounded funds.

[2] DJL Investments took a contrary position in a discovery response, asserting that it did "not contend it had the right to apply the money in the impound account to the amounts owed by Hendrix Properties under the Promissory Note and/or that it did apply the money in the impound account to the amounts owed by Hendrix Properties under the Promissory Note."

II.    Hendrix Properties was entitled to summary judgment on DJL Investments' fraud counterclaim.

**¶22**        DJL Investments next contends that the superior court erred by entering summary judgment for Hendrix Properties on the fraud counterclaim.    DJL Investments alleged that Hendrix Properties' representatives fraudulently induced the loan by making deceptive statements and omissions about the LRBID agreement.  The superior court found that the undisputed evidence showed no false statements, reasonable reliance, or damages as required to establish fraud. *See Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 500 (1982) (listing the elements of fraud).  Alternatively, the court concluded that the counterclaim was time-barred.

**¶23**        We agree that summary judgment on the fraud counterclaim was warranted on limitations grounds and therefore need not address whether it also was warranted based on the elements of the tort.  Fraud is subject to a three-year limitations period, A.R.S. § 12-543, that begins to run "when the [claimant] by reasonable diligence could have learned of the fraud, whether or not he actually learned of it," *Coronado Dev. Corp. v. Superior Court (Gesky)*, 139 Ariz. 350, 352 (App. 1984).  Where the claimant receives information that would allow one exercising reasonable diligence to discover the basis for liability, the claimant's negligence, indifference, or inattention to that information will not toll the limitations period. *Guerin v. Am. Smelting & Refining Co.*, 28 Ariz. 160, 170 (1925).

**¶24**        Here, the limitations period began to run, at the very least, in May 2019 when Matthew Laughlin and Diaz received Laurin Hendrix's email about an assessment invoice.[3]  Hendrix attached the invoice, which referenced the "LAUGHLIN RANCH IMPROVEMENT DIST.," and he wrote that it was "the invoice for the improvement district on Section 7" for which "[t]he funds were impounded and held by lender as part of loan agreement."  Based on this email, Matthew Laughlin and Diaz were put on notice that the Property might be subject to a previously unknown improvement district, and they were given information sufficient to enable them to discover, with reasonably diligent efforts, the LRBID agreement.[4]

---

[3] We need not address whether earlier events started the limitations period because even this later event placed the counterclaim outside the timeframe.

[4] At oral argument on appeal, DJL Investments asserted that the email did not make clear that it concerned the Property.  But the Property was

Accordingly, the limitations period began to run from the date of the email. The fact that Matthew Laughlin and Diaz summarily disregarded the email, and that Diaz did not act knowingly when she later helped a co-worker pay the invoice, had no tolling effect.

**¶25** DJL Investments relies on an unpublished decision, *Chatha v. Marwah*, 1 CA-CV 23-0400, 2024 WL 3829635 (Ariz. App. Aug. 15, 2024) (mem. decision), to argue that the May 2019 email did not necessarily create notice of a need to investigate. *Chatha* is distinguishable. In *Chatha*, the plaintiffs alleged that their business partner fraudulently induced them to pay him for his falsely claimed loss in selling his joint-venture interest to settle a lawsuit. *See id.* at *1-2, ¶¶ 2-13. We held that emails informing the plaintiffs that their joint-venture interests were worth "around 8-10 million" based on a "multiple of earnings approach that is how [the defendant's] interest was acquired" were insufficient to establish as a matter of law that the plaintiffs should have investigated. *See id.* at *4, ¶¶ 22-23. We emphasized that the emails did not plainly refute the defendant's express misrepresentations about the sale because they did not specify what he was paid or what multiple of earnings was used. *See id.* Here, by contrast, Hendrix's email was clear and complete. He plainly informed DJL Investments that he expected an improvement district invoice for the Property, which referenced a partial version of the LRBID's name (which was wholly dissimilar to the name of the district listed in the title report), to be paid from the impounded loan funds. Unlike in *Chatha*, it is inarguable that the email put DJL Investments on notice to investigate.

**¶26** Hendrix's email started the limitations period in May 2019. DJL Investments did not assert its fraud counterclaim until January 2024, more than three years later. The superior court correctly entered summary judgment for Hendrix Properties on limitations grounds.

## CONCLUSION

**¶27** We affirm the grant of summary judgment for Hendrix Properties on the breach of contract claim and on the fraud counterclaim. In exercise of our discretion, we deny Hendrix Properties' request for attorneys' fees on appeal under A.R.S. § 12-341.01. Under A.R.S. § 12-341,

---

described in the parties' deed of trust in terms of "Section 7." Further, as DJL Investments also emphasized at oral argument, Donald Laughlin was not in the business of making loans. The email cannot reasonably be read as referring to anything other than the loan and property at issue.

Hendrix Properties is entitled to recover its costs on appeal upon its compliance with Arizona Rule of Civil Appellate Procedure 21.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR