[S. F. No. 21372.   In Bank.   Aug. 25, 1964.]

A-1 DOOR AND MATERIALS COMPANY, Plaintiff, Cross-defendant and Respondent, v. FRESNO GUARANTEE SAVINGS & LOAN ASSOCIATION, Defendant, Cross-complainant and Appellant; M. KELLNER & SON LUMBER COMPANY et al., Cross-defendants and Respondents; BENJAMIN LEVITT et al., Cross-defendants and Appellants.

Docker, Docker, Perkins & Shelton, John M. Shelton and Frederick W. Docker for Defendant, Cross-complainant and Appellant.

McKenna & Fitting, Norman H. Raiden, James C. Peterson, Morrison, Foerster, Holloway, Clinton & Clark, Douglas C. White, Landels, Ripley, Gregory & Diamond and Edward D. Landels as Amici Curiae on behalf of Defendant, Cross-complainant and Appellant.

Doty, Quinlan & Kershaw, Burke & La Rue and William A. Quinlan for Cross-defendants and Appellants.

Clifford R. Lewis for Plaintiff, Cross-defendant and Respondent.

Hynes, Bowser & Brunn and McKnight Brunn as Amici Curiae on behalf of Plaintiff, Cross-defendant and Respondent.

Meux, Gallagher, Baker & Manock, Kendall L. Manock and Ralph Moradian for Cross-defendants and Respondents.

TRAYNOR, J.—Defendant and certain cross-defendants appeal from a judgment for plaintiff and cross-defendants determining the rights of unpaid materialmen to the proceeds of construction loans held by defendant savings and loan association.

The case was tried on an agreed statement of facts. Defendant entered into three construction-loan agreements with the owners of three parcels of unimproved real property. Each loan was secured by a deed of trust on the parcel of property to which the loan was to be applied. The owners assigned the loan funds to defendant, and defendant agreed to disburse them in five equal progress payments, the last payment to be due on the completion of each project. Construction of the buildings was not completed, and no further work was done after the fourth progress payment. Defendant retained the unexpended funds. Plaintiff and three other unpaid materialmen (hereinafter called stop-notice claimants) filed bonded stop notices with defendant pursuant to section 1190.1, subsection (h) of the Code of Civil Procedure.[1] Several other materialmen (hereinafter called mechanic's lien claimants), who did not file stop notices, filed mechanic's lien claims. Plaintiff brought this action to enforce its claim, and defendant cross-complained for a declaration of the rights of all parties interested in the disposition of the loan funds. All of the cross-defendants who answered claimed a right to the loan funds, the stop-notice claimants on the basis of their notices and the mechanic's lien claimants on the ground that having recorded mechanic's liens, they had equitable liens on

---

[1]Section 1190.1, subsection (h) provides that any supplier of labor or materials except the general contractor "in any instance in which the funds with which the cost of the work of improvements are, wholly or in part, to be defrayed from the proceeds of a building loan, [may] give to . . . [any] party holding any funds furnished or to be furnished by the owner or lender or any other person as a fund from which to pay construction costs or arising out of a construction or building loan, a notice" that he has supplied labor materials of a specified value to the owner. If a bond of a specified amount is filed with the notice of claim, the person given the notice "must withhold from the borrower or other person to whom said owner may be obligated to make payments or advancements out of said fund sufficient money to answer such claim. . . . No assignment by the owner . . . of construction loan funds, whether made before [or after] a verified claim is filed . . . shall be held to take priority over claims filed under this subsection (h) and such assignment shall have no binding force insofar as the rights of claimants who file claims hereunder are concerned."

the funds. Defendant admitted that the claimants had not been paid and stipulated to the amounts of their claims, but contended that it had a right to apply the undisbursed funds to reduce the owners' debt to it or to complete the buildings.

The trial court held that the stop-notice claimants were entitled to recover from defendant on their claims; that those claims were of equal priority and had priority over all other claims; and that the mechanic's lien claimants had equitable liens on the loan funds of equal priority with the defendant's claim that it had a right to use the funds to complete the buildings. The trial court allowed interest on all claims and held it to be a personal liability of defendant.

We agree with defendant that the evidence does not support the finding that the mechanic's lien claimants were entitled to equitable liens on the loan funds. An equitable lien may be imposed on a construction-loan fund only if it is established that the borrower or lender induced the supplier of labor or materials to rely on the fund for payment. (*Smith* v. *Anglo-California Trust Co.,* 205 Cal. 496, 501-504 [271 P. 898]; *Pacific Ready Cut Homes, Inc.* v. *Title Ins. & Trust Co.,* 216 Cal. 447, 450-452 [14 P.2d 510].) There is no evidence in the record of any reliance on the loan funds or of any inducement so to rely. Nor is there any evidence from which reliance may reasonably be inferred. (Compare *Smith* v. *Anglo-California Trust Co., supra,* at pp. 502-503.)

Invoking *Hayward Lbr. & Inv. Co.* v. *Coast etc. Assn.,* 47 Cal.App.2d 211 [117 P.2d 682], the mechanic's lien claimants contend that they established their right to an equitable lien merely by filing mechanic's lien claims. That case did not so decide. The fundholder there conceded the claimants' right to the fund, and the only issue litigated was whether it was necessary to file suit to perfect the claims.

The mechanic's lien claimants contend that the trial court erred in upholding the claims of two stop-notice claimants because they did not file mechanic's lien claims. The right to recover on a stop-notice claim, however, "does not depend upon the establishment of a lien." (*Diamond Match Co.* v. *Silberstein,* 165 Cal. 282, 288 [131 P. 874].) The remedies are independent and cumulative. (*Id.* at pp. 288-289; *Calhoun* v. *Huntington Park First Sav. & Loan Assn.,* 186 Cal.App.2d 451, 459 [9 Cal.Rptr. 479], and cases cited.)

Defendant contends that the stop-notice claims should not have been allowed because section 1190.1, subsection (h)

provides for an equitable garnishment of construction-loan funds. An effective legal garnishment depends on there being an existing debt owed by the garnishee to the debtor. Defendant owes the owners nothing, however, because of their default. In defendant's view there is therefore nothing to garnish.

Section 1190.1, subsection (h) does refer to the stop-notice claims as effecting an equitable garnishment. As defendant points out, this term undoubtedly was derived from a series of cases interpreting the stop-notice provisions of the mechanic's lien law enacted in 1885 (Stats. 1885, ch. 152, p. 143) and amended or repealed in 1911 (Stats. 1911, ch. 681, p. 1313.) The term "equitable garnishment" was used interchangeably with "equitable assignment," "equitable lien," and "equitable subrogation" (see, e.g., *Bates* v. *County of Santa Barbara,* 90 Cal. 543, 546-547 [27 P. 438]; *Weldon* v. *Superior Court,* 138 Cal. 427, 429-430 [71 P. 502]; *Butler* v. *Ng Chung,* 160 Cal. 435, 439 [117 P. 512, Ann.Cas. 1913A 940]; *Diamond Match Co.* v. *Silberstein,* 165 Cal. 282, 288 [131 P. 874]; *Stettin* v. *Wilson,* 175 Cal. 423, 426 [166 P. 6]) to describe the effect of stop-notice claims on funds held by owners. Under the statutory provisions in effect at that time the personal liability of the owner to stop-notice claimants was limited, as it presently is under section 1190.1, subsection (c), to the amount "due or that may become due" to the owner's contractor. It was suggested in dicta in several of the foregoing cases that the claimants' rights against the owner were therefore limited to the contractor's rights under his contract. This position would be consistent with the use of the terms "garnishment," "assignment," or "subrogation" in their usual senses. Nevertheless, in the most recent case decided by this court in which the issue was considered, *Stettin* v. *Wilson,* 175 Cal. 423, 426 [166 P. 6], it was held that the terms of the owner's contract with his contractor, which would have barred any recovery by the contractor because he had abandoned his contract, did not preclude recovery from the owner by stop-notice claimants. That there was no money due under the contract was held not to be determinative of the issue. (See also *G. Ganahl Lbr. Co.* v. *Weinsveig,* 168 Cal. 664, 668-670 [143 P. 1025]; *Diamond Match Co.* v. *Silberstein,* 165 Cal. 282, 286-288 [131 P. 874]; *Hampton* v. *Christensen,* 148 Cal. 729, 737-739 [84 P. 200].) Thus the use of the term "equitable garnishment" does not imply that the stop-

notice claimants' right to recover depends on the owners' rights under their contract with defendant. Nor does the use of the word "withhold" in subsection (h) imply that the monies withheld must be due the owner. The fact that the fundholder may be under no compulsion to pay does not mean that he may not voluntarily disburse the funds. The requirement that the fundholder withhold claimed funds applies not only when his contract calls for payment but even when it does not.

Subsection (h) requires that upon receipt of a bonded stop-notice claim the fundholder "must withhold from the borrower or other person to whom said owner may be obligated to make payments or advancements out of said fund sufficient money to answer such claim." The subsection does not require the fundholder to withhold only so much of the fund as may be due under its contract with the owner. On the contrary the "said fund" from which a lender must withhold claimed money is defined in the first paragraph of subsection (h) as that amount "furnished or to be furnished by the . . . lender . . . as a fund from which to pay construction costs," or that amount "arising out of a construction or building loan." The fundholder must therefore withhold from funds furnished to pay construction costs or arising out of a construction loan sufficient money to answer bonded stop-notice claims regardless of the terms of its contract with the owner. If the terms of that contract determined the rights of the claimants under subsection (h), the parties to the contract could effectively eliminate those rights. They might, for example, condition the lender's obligation to pay on there being no stop notices filed. Subsection (h) requires that funds earmarked for construction purposes be used to pay suppliers of labor and materials who file claims under the subsection and therefore supersedes the private arrangements of borrower and lender.

Furthermore, defendant's claim to the funds in this case is incompatible with the final sentence of subsection (h): "No assignment by the owner . . . of construction loan funds, whether made before [or after] a verified claim is filed . . . shall be held to take priority over claims filed under this subsection (h) and such assignment shall have no binding force insofar as the rights of claimants who file claims hereunder are concerned." The arrangement between the owners and defendant is directly controlled by this provision. De-

fendant lent specified amounts to the owners for construction purposes, and the owners executed promissory notes for, and agreed to pay interest on, the full amount of each loan. Such a fund as is contemplated by subsection (h) was therefore created. The owners assigned the funds to defendant as security for their obligation to repay the loans and for any of their other obligations to defendant.[2] Defendant agreed to disburse the funds according to a progress payment schedule. Thus defendant's possession of the funds and its defense to the stop-notice claims based on its asserted right to continued possession of the funds depend entirely on assignments invalidated by the terms of subsection (h).

Defendant contends that allowing the claims herein will result in forcing it to violate state statutes governing the lending practices of savings and loan associations. These statutes limit the amount of construction loans to a specified percentage of the projected appraised value of the property to be improved. (Fin. Code, §§ 7152-7154, 7156.) There is no showing in this case, however, that the loans exceeded the permitted percentage. It is therefore unnecessary to consider the issue.

█ There is no merit in defendant's contention that a construction of section 1190.1, subsection (h) that invalidates the assignment is an unconstitutional infringement of its right to contract. It is a legitimate legislative purpose to give suppliers of materials and labor reasonable assurance that they will be compensated. (Cal. Const., art. XX, § 15; *Roystone Co.* v. *Darling,* 171 Cal. 526, 540 [154 P. 15]), and subordinating the claims of assignees of construction-loan funds to those of stop-notice claimants is a reasonable way to accomplish that purpose. Furthermore a lender such as defendant can make loan funds immune from claims under section 1190.1, subsection (h) by furnishing a materials and labor bond complying with the requirements of section 1185.1 of the Code of Civil Procedure. (Code Civ. Proc., § 1190.1, subsec. (j).)

█ Defendant correctly contends that the trial court erred in holding it personally liable for interest before judgment. Stop-notice claims to one of the three funds, the fund allocated to Parcel 1, exceeded the amount in that fund. The

---

[2]Defendant also was given first deeds of trust on the property to be improved as security for the loans.

trial court prorated the claims so that their total equaled the amount of that fund and allowed interest before judgment on the claims as adjusted. Defendant was thus held liable for an amount in excess of that fund. The stop-notice claimants concede that defendant complied with the provisions of section 1190.1, subsection (h) by withholding the funds from the owners, but contend that section 1190.1, subsection (h) impliedly requires the fundholder to pay the claims, pro rata if necessary, as soon as their total has been ascertained. A failure to pay at that time, they contend, is a breach of the fundholder's obligation resulting in its being personally liable for interest on the claims from the date the fundholder's obligation to pay arose.

The claimants' right to payment, however, arises not simply upon their giving notice of their claims, but upon compliance with section 1197.1 of the Code of Civil Procedure. Subsection (a) of that section provides, "No action to enforce the payment of any claim, notice of which may be given pursuant to article 2 [Code Civ. Proc., §§ 1190.1-1192.2], shall be commenced against the owner[3] . . .prior to the expiration of the period within which claims of lien must be filed for record, as prescribed by section 1193.1 of this code, nor shall any such suit be commenced later than 90 days following the expiration of such period. No money . . . shall be withheld by reason of any such notice as is prescribed by article 2 longer than said 90 days . . . unless proceedings be commenced in a proper court within that time by the claimant to enforce his claim; and . . . upon the termination of said 90 days above provided if such proceedings have not been commenced, such notice shall cease to be effective and the moneys . . . withheld shall be paid or delivered to the . . . person to whom they are due." Subsections (c) and (d) provide for the joinder of parties, for the consolidation of actions, and for impleading all claimants to withheld funds "to the end that the respective rights of all parties may be adjudicated and settled" in one action. Defendant's withholding the funds until the claimants established their

---

[3]Because of his interest in the loan funds, the owner is a necessary party to a proceeding to enforce a claim, notice of which is given under section 1190.1, subsection (h) (see *Gregg* v. *Stark*, 128 Cal.App. 434, 436-437 [17 P.2d 766]; *Neal* v. *Bank of America*, 93 Cal.App.2d 678, 681 [209 P.2d 825]), and is a necessary party to a complete settlement of the entire controversy. (See *Bank of California* v. *Superior Court*, 16 Cal.2d 516, 523 [106 P.2d 879].)

claims was therefore not in breach of its obligations but in compliance with the requirements of both section 1190.1, subsection (h) and section 1197.1. Defendant's liability for stop-notice claims is therefore limited to the amount of the fund against which the claims are asserted.

■ There is no merit, however, in defendant's contention that if a fundholder complies with section 1190.1, subsection (h) no interest before judgment can ever be allowed. Defendant concedes that interest before judgment would properly be chargeable to the owners in this case. As stated in *Calhoun* v. *Huntington Park First Sav. & Loan Assn.*, 186 Cal.App.2d 451, 462 [9 Cal.Rptr. 479], "The 'equitable garnishment' effected through stop notice proceedings, like the mechanic's lien, 'is as extensive as the claim which it is intended to protect.' (*Pacific Mutual Life Ins. Co.* v. *Fisher*, 106 Cal. 224, 233, 234 [39 P. 758].)'' (See *Diamond Match Co.* v. *Silberstein*, 165 Cal. 282, 288-289 [131 P. 874].) To the extent that construction-loan funds are available, therefore, the fundholder must pay whatever the owners owe the stop-notice claimants.

■ Nor is there any merit in defendant's contention that awarding interest before judgment will create unreasonable uncertainty for fundholders as to how much of the loan funds must be withheld when bonded stop notices are filed. The fundholder must withhold the amount claimed in the stop notice, and any doubts about how much to withhold can be resolved by examining the bond accompanying the notice. To compel the withholding of funds the claimant must file a bond in the amount of one and one quarter times the amount of the claim. The amount that must be withheld is therefore eighty per cent of the amount of the bond.

The trial court's decision does not, as defendant contends, create uncertainty about the date from which to compute interest. The court awarded interest to two of the claimants from the date the owners' obligation became due, which was correct (Civ. Code, § 3287), and to the other claimants from the date that their notices were filed. Since the latter claimants asked for interest from the date the notices were filed and did not allege or prove that the obligations were due at an earlier date, the court's award to them was also correct.

· The judgment for the mechanic's lien claimants is reversed. To the extent that defendant was held personally liable for interest before judgment, the judgment is reversed with direc-

tions to the trial court to recompute the claims to the fund allocated to Parcel 1 so that the total of the prorated claims including interest equals the amount of that fund. In all other respects the judgment is affirmed. Defendant and the stop-notice claimants shall recover their costs on the appeal of the mechanic's lien claimants. Defendant shall recover its costs on its appeal from the judgment in favor of the mechanic's lien claimants. The stop-notice claimants and defendant shall bear their own costs on defendant's appeal from the judgment in favor of the stop-notice claimants.

Gibson, C. J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.

