[Civ. No. 23564. First Dist., Div. Two. Sept. 22, 1967.]

DOUD LUMBER COMPANY, INC., Plaintiff and Appellant, v. GUARANTY SAVINGS AND LOAN ASSOCIA- TION, Defendant and Respondent.

---

Weir, Hopkins, Donovan & Zavlaris, Weir, Hopkins & Donovan and Robert C. Donovan for Plaintiff and Appellant.

Emery J. Delmas for Defendant and Respondent.

TAYLOR, J.—Doud Lumber Company, Inc. (hereafter Doud) appeals from an adverse judgment on its complaint to impose an equitable lien on certain funds realized by defendant, Guaranty Savings and Loan Association (hereafter Guaranty) after a foreclosure sale of an uncompleted apartment building in San Jose. Doud argues that the materials it supplied enhanced the value of the security and unjustly enriched Guaranty.

The facts are not in dispute. In November 1960 Guaranty entered into a written contract with the owner, Bonanza, Inc. (hereafter Bonanza), for a construction loan in the amount of

$110,000 to be used to build an apartment house on Bonanza's Tyrella Street property. The loan was secured by a first deed of trust on the property in favor of Guaranty. The loan funds were to be disbursed as the work progressed, to the satisfaction of Guaranty, as follows: the first installment of $22,292 when the building had been roofed and enclosed and the rough plumbing topped out through the roof and roof wiring completed; the second (likewise $22,292) when sheet rock had been applied and the interior improvement and exterior had stucco or cement finish applied; the third (also $22,292) when the improvement was completed and notice of completion appeared on its face to be valid and had been delivered for recordation; and the fourth installment, consisting of the balance, 35 days after the filing of the notice of completion.

Doud was to provide the lumber and lumber materials for the Tyrella Street project to J. G. Enterprises, the general contractor for Bonanza. Doud had done business with the general contractor for about a year and had experienced a generally satisfactory business relationship. At the time here in question, Doud was to provide materials for the general contractor on two other jobs. Before any of these three construction projects began, the general contractor was $4,800 in arrears to Doud and had been so for several months. Thus, prior to starting any of these jobs, Doud ascertained from Jack O'Neil, the principal of Bonanza's general contractor's firm, that there was a construction loan on each job and also the name of the lender. Thereafter, pursuant to its oral agreement with the general contractor, Doud began delivery on the Tyrella job about April 3, 1961, at the then existing market price.

Doud's final delivery for the Tyrella job was made on May 16-18, 1961. On May 3, 1961, Doud for the first time, met with Guaranty and indicated that its payments were not coming as expected and that it wanted the loan checked to see if there was anything that could be done to speed up the flow of money. Guaranty informed Doud that because of the payment schedule on the loan, the money was slow in coming and there was nothing to be done about it. Thereafter, Doud kept in touch with Guaranty through numerous telephone conversations and additional meetings. In the latter part of 1961, Doud filed a mechanic's lien claim for its $6,884.51 balance due on the Tyrella job. Thereafter, Guaranty initiated fore-

closure proceedings under its first deed of trust and extinguished all lien rights held by Doud.

The loan disbursements were not made as provided in the construction loan agreement. Because of Bonanza's financial difficulties, Guaranty advanced $9.000 when the loan was recorded on November 29, 1960; on December 13, 1960, there was an advance of $322.50 for title and recordation fees. Thereafter, Guaranty advanced interest payments on the loan, a loan fee of $6,050, and a $60 membership share. The first construction disbursement of $12,000 was made on April 27, 1961. On May 16, 1961, Guaranty disbursed $10,292 and on May 25, the second installment of $22,292.

The first payment of principal and interest on the construction loan in the amount of $870 was due on August 1, 1961, the projected date of completion. Bonanza failed to make the first payment and defaulted on the loan. Thereafter, Guaranty sold the property under the power of sale in its deed of trust after foreclosure for $81,000. At the time of the foreclosure sale, the principal balance on the loan, plus certain costs of sale, was about $74,500.

The court found that Doud did not rely on and was not materially induced by the loan agreement between Bonanza and Guaranty; that Bonanza was in default on its contract with Guaranty and was without assets; that the building contemplated was not substantially completed prior to the foreclosure sale; and that Guaranty has not received an unconscionable benefit from the project or the foreclosure of the deed of trust. Accordingly, the court concluded that Doud was not entitled to an equitable lien on the funds recovered by Guaranty.

■ An equitable lien may be imposed on a construction loan fund only if it is established that the borrower or lender induced the supplier of labor or materials to rely on the fund for payment (*A-1 Door & Materials Co.* v. *Fresno Guar. Sav. & Loan Assn.*, 61 Cal.2d 728, 732 [40 Cal.Rptr. 85, 394 P.2d 829]). ■ Therefore, the only question before us is whether, from the above uncontroverted facts, the trial court properly concluded that Doud was not induced by Guaranty or Bonanza to rely on the loan fund and was, therefore, precluded from asserting an equitable lien.

The record indicates that the court, in finding a lack of inducement and reliance, attached particular significance to the facts that Doud had delivered all but the last $200 worth

of its materials to the job prior to its first discussions with Guaranty on May 3, and that the building was not completed at the time of the foreclosure sale. These circumstances would appear to be of little or no significance under the reasoning of the most recent cases (*McBain* v. *Santa Clara Sav. & Loan Assn.*, 241 Cal.App.2d 829, 841 [51 Cal.Rptr. 78]; *Miller* v. *Mountain View Sav. & Loan Assn.*, 238 Cal.App.2d 644, 658-659 [48 Cal.Rptr. 278]) and after considering the entire record, it is our opinion that the trial court would have felt compelled, as a matter of law, to reach a contrary conclusion had it had the benefit of these decisions at the time judgment was rendered.

*McBain* v. *Santa Clara Sav. & Loan Assn., supra,* relying on *Smith* v. *Anglo-California Trust Co.*, 205 Cal. 496, 501-504 [271 P. 898], and *Pacific Ready Cut Homes, Inc.* v. *Title Ins. & Trust Co.*, 216 Cal. 447, 450-452 [14 P.2d 510], emphasized that, basically, it is the fund itself and the arrangement for progress payments therefrom, created by the mutual agreement of the borrower and the lender, that constitutes the material inducement to the subcontractors and materialmen. Both *Smith* and *Ready Cut* indicated that the necessary elements of inducement and reliance could be inferred from the circumstances of the transaction without great difficulty and suggested that an improver's knowledge that a construction loan had been negotiated would be sufficient.

Quoting extensively from *Smith*, the court in *McBain* stated that given the customary periodic disbursements of the construction loan after inspection by the lender, relatively little circumstantial evidence of reliance was required. The court also pointed out that because the lender was usually protected by a first priority encumbrance, the remedy of equitable lien was judicially created for the protection of the subcontractors and materialmen in the type of situation here presented. This court (Division One) then upheld the equitable liens of two claimants who were simply told by the borrower that they would be paid from the construction loan without being given the identity of the lender. In *Miller* v. *Mountain View Sav. & Loan Assn.*, the same court found sufficient evidence to support inducement and reliance from the fact that the improver had received some payments from a joint control agent of the lender.

Like the lender in *McBain*, Guaranty not only occupied a favored position of priority under its deed of trust, but under

**the terms of** the loan agreement had full control of the loan funds and of the progress payments to be disbursed therefrom. Guaranty was, therefore, in a commanding position to employ well known and commonly accepted business and fiscal methods to prevent the diversion of the progress payments. Since the progress payments were to be made as the work reached specific stages of completion, and since they were disbursed only after Guaranty was satisfied by an inspection of the property that such stages had been reached, it would be naive to conclude that Guaranty was unaware of any reliance on the loan funds by persons contributing to the progress of the work with knowledge of the loan.

Here, the circumstantial evidence of inducement and reliance is considerably stronger than in *McBain*. There was uncontroverted evidence that Doud was not only made aware of the identity of the lending institution by the borrower's general contractor, but conferred with Guaranty regarding the progress payments. The record also shows that because of the general contractor's indebtedness to Doud on other jobs, Doud made certain that there was a construction loan before making any deliveries to the Tyrella job. Since the contract between Doud and the general contractor was an oral one for materials at market price and based on their long-standing business relationship, it is of little significance here that Doud had completed all but the last delivery before having its first conversation with Guaranty. Guaranty occupied a privileged and secure position by virtue of its first deed of trust and it had full control of the loan funds. Yet, despite its dominant position in the arrangements and its apparent sophistication in commercial financing, it had not only neglected to protect its privileged position but now seeks to claim the benefits of the materials contributed to the property by Doud (*Miller* v. *Mountain View Sav. & Loan Assn., supra,* pp. 658-659).

It has been held that an equitable lien may be imposed on a fund if either the borrower or the lender induced materialmen to rely thereon (*A-1 Door & Materials Co.* v. *Fresno Guar. Sav. & Loan Assn., supra,* p. 732). Here, Doud's reliance was primarily induced by the loan fund that was created through the joint acts and mutual agreement of the owner and Guaranty, made known to Doud by the borrower's general contractor. Here, as in the *Smith* case, *supra,* at pages 504-505, the incapacity of the owner and general contractor to pay Doud was emphasized by the latter's prior unpaid debt and the former's agreement with Guaranty for a loan to be used

expressly for the purpose of building the Tyrella job. It is reasonably apparent that the loan could not have been obtained without giving the deed of trust with its security priority to Guaranty. Therefore, it requires very little showing to conclude that without confidence in the payment of the loan contracted for, Doud would not have extended credit for the materials supplied.

The reasonableness of such expectations on the part of Doud must naturally have suggested itself to both Doud and Guaranty. They must have known that the consummated agreement for the money to be advanced to or on behalf of the owner as the buildings progressed under a deed of trust taking priority over the statutory means available to those contracting with the owner or its general contractor, would constitute a material inducement in supplying the labor and materials. As if in express recognition of the reasonableness of these expectations the practice was to make disbursements from the proceeds of the construction loan only as the work progressed and was completed to the satisfaction of Guaranty. Thus, the borrowing owner and Guaranty, by their conduct in setting up the loan agreement, which in the ordinary course of business and prior to any deliveries on the job became known to Doud through the general contractor, induced Doud to supply the materials necessary for construction and to enhance the real property. The disclosure of the consummated construction loan agreement to Doud by the borrower's general contractor, under the circumstances of this case, was tantamount to a disclosure by the borrower. Guaranty's assurances to Doud during their direct conversations, though subsequent to the delivery of most of the materials, confirmed the inducement and reliance that one would normally have expected from the initial disclosure of the loan arrangement to Doud made prior to any deliveries.

The trial court found that since the building was not completed, there could be no unjust enrichment. In *Miller* v. *Mountain View Sav. & Loan Assn., supra,* a materialman's equitable lien was on an uncompleted project where the lender had realized a substantial profit on the foreclosure sale. The court said at page 664: "In *Pacific Ready Cut Homes* the lender was expressly denied the right to offset the balance held against the principal of the loan to the detriment of the lien claimant. It is no great step to conclude that such offset should not be allowed even though the building is not com-

plete, as was done by the District Court of Appeal in *A-1 Door* (Cal.App.) 36 Cal.Rptr. 576, 583. The reasoning behind *Smith* and *Pacific Ready Cut Homes* is as applicable to the claimant putting in the foundation, or the rough plumbing, as it is to the carpenter driving the last spike. All other factors being equal the rights of one contributing to the construction should not depend on the stage thereof at which his contribution was made." Identical reasoning was followed with respect to the uncompleted building in *McBain, supra,* at pages 845-846.

Here, the lender was considerably enriched at the expense of Doud, whose goods increased the value of the structure and made the profit possible. As one authority has indicated, despite the extensive language of the cases concerning inducement and reliance. the fact of unjust enrichment is of greater significance in determining the availability of the equitable remedy (Goulden & Dent, *More on Mechanics Liens, Stop Notices and the Like,* 54 Cal.L.Rev. 179, 191-192). We hold, as a matter of law, on the undisputed facts of the case, that Doud relied and was materially induced by the loan construction contract between Guaranty and the owner and that it would be inequitable and unjust to permit Guaranty to withhold at this time any part of the fund upon which Doud relied for reimbursement. Nor does the fact that Guaranty foreclosed under its deed of trust defeat Doud's rights which were not in the property but in the sums that Guaranty had agreed to advance (*Miller* v. *Mountain View Sav. & Loan Assn., supra,* pp. 664-665).

The judgment is reversed and the cause remanded to the trial court with directions to amend its findings of fact and conclusions of law and to enter judgment in favor of Doud in conformity with the facts herein expressed. The judgment shall provide for interest on the amount of the claim computed at the legal rates from the date the obligation became due.

Shoemaker, P. J., and Agee, J., concurred.