[No. A040248. First Dist., Div. One. Nov. 21, 1988.]

NIBBI BROTHERS, INC., Plaintiff and Appellant, v.
HOME FEDERAL SAVINGS AND LOAN ASSOCIATION et al.,
Defendants and Respondents.

1416

COUNSEL

Reuben, Quint & Valkevich, James A. Reuben and Lawrence R. Sussman for Plaintiff and Appellant.

Richard E. Norris, Joshua Genser and Norris & Norris for Defendants and Respondents.

OPINION

NEWSOM, J.—Nibbi Brothers, Inc., (hereafter Nibbi) appeals from a judgment of dismissal entered after Home Federal Savings & Loan Association (hereafter Home) filed a demurrer and a motion to strike portions of its second amended complaint. Nibbi there alleged nine causes of action against Home, Brannan Street Investors, and four additional defendants but named Home as a defendant in only three causes of action. Home filed a demurrer against two of these causes of action and a motion to strike a third cause of action. The trial court sustained the demurrer and granted the motion to strike without leave to amend.

Nibbi's opening and reply briefs address only two of the three causes of action subject to demurrer—the third cause of action alleging a theory of unjust enrichment and the fifth cause of action alleging negligent misrepresentation. In the absence of argument, we regard Nibbi as having waived any objection to the order sustaining the motion to strike its remaining cause of action against Home. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 479, p. 469.)

Home had extended a secured loan to Brannan Street Investors, a California general partnership, for a series of construction projects. In March 1985, Brannan Street Investors contracted with Nibbi as a general contractor to make approximately $290,000 in tenant improvements to certain property in San Francisco. Before agreeing to perform the job, Nibbi received an assurance from Home that enough money had been set aside in a construction loan fund to cover the cost of the work. In the early stages of the project, Home paid Nibbi directly from the construction loan fund but suspended payments in July 1985 after recording a notice of default on the deed of trust securing the loan. Nibbi did not learn of the notice of default but asked Home when it would be paid. Home assured Nibbi that it "would be paid for work performed." Nibbi proceeded to expend $66,000 in additional tenant improvements, but was never paid for the work. In February 1986, Home acquired the property at a private foreclosure sale and remains the owner. Nibbi then sued Home, Brannan Street Investors, and certain tenants to recover the value of its work.

The allegations of unjust enrichment in the third cause of action raise two issues: does Nibbi in effect claim an equitable lien barred by Civil Code section 3264? and does it state a valid cause of action under the law of restitution? We will first examine the effect of Civil Code section 3264.

Suppliers of labor and materials in real estate construction projects have long enjoyed two statutory remedies: foreclosure of a mechanic's lien and service of a bonded stop notice on the construction lender requiring it to withhold sufficient funds from the construction loan account to pay for the work. But a line of cases beginning with *Smith* v. *Anglo-California Trust Co.* (1928) 205 Cal. 496 [271 P. 898], disapproved on another point in *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685], also gave suppliers of labor and materials a nonstatutory right known as an equitable lien to unexpended funds in the construction loan account. This right, based on the equitable principles of estoppel and unjust enrichment, was recognized where the suppliers contributed services in reliance on the construction loan account and thereby enhanced the value of the lender's security.

In its early application, the equitable lien was recognized only where the project reached a stage of completion that actually benefited the lender's security interest and the evidence "established that the borrower or lender induced the supplier of labor or materials to rely on the fund for payment." (*A-1 Door & Materials Co.* v. *Fresno Guar. Sav. & Loan Assn.* (1964) 61 Cal.2d 728, 732 [40 Cal.Rptr. 85, 394 P.2d 829]; Marsh, Cal. Mechanics' Lien Law (4th ed. 1985) § 5.27, p. 5-24.) But two Court of Appeal decisions in the mid-1960's extended the doctrine both to uncompleted construction

projects and to cases where the suppliers relied on representations of the borrower rather than the lender in contributing their services. (*Miller* v. *Mountain View Sav. & L. Assn.* (1965) 238 Cal.App.2d 644 [48 Cal.Rptr. 278]; *McBain* v. *Santa Clara Sav. & Loan Assoc.* (1966) 241 Cal.App.2d 829 [51 Cal.Rptr. 78].) This judicial expansion of the doctrine appeared to prevent lenders from applying unexpended construction loan funds to the repayment of the developer's debt until the rights of all subcontractors and materialmen had been settled, consequently increasing their financial exposure. It was widely feared that the expanded doctrine would discourage investment in real estate development.

In 1967 the Legislature responded by eliminating altogether the supplier's equitable lien on construction loan accounts. Civil Code section 3264 now provides: "The rights of all persons furnishing labor, services, equipment, or materials for any work of improvement, with respect to any fund for payment of construction costs, are governed exclusively by Chapters 3 (commencing with Section 3156) and 4 (commencing with Section 3179) of this title, and no person may assert any legal or equitable right with respect to such fund, other than a right created by direct written contract between such person and the person holding the fund, except pursuant to the provisions of such chapters."

Nibbi argues that section 3264 should not be applied to general contractors. In denying nonstatutory rights to the construction loan fund, the section relegates suppliers to the statutory stop notice procedure provided by chapters 3 and 4 of the title. The stop notice procedure, however, is not available to general contractors but only to subcontractors and materialmen. (Civ. Code, §§ 3158, 3159, and 3181.) The Legislature, Nibbi reasons, could not have intended to bar contractors from an equitable lien on the construction fund since it did not give them the alternative statutory remedy mentioned in the section. But the argument is best directed to the Legislature. Section 3264 provides that the rights of "all persons" to the construction loan fund are governed exclusively by the statutory stop notice procedure and that "no person" may assert a legal or equitable right to the fund other than a right created by a direct written contract. The unequivocal phrases, "all persons" and "no person," do not admit of any exception. It is not surprising that two recent cases have assumed without discussion that section 3264 applies to general contractors. (*Sofias* v. *Bank of America* (1985) 172 Cal.App.3d 583 [218 Cal.Rptr. 388]; *Pankow Const. Co.* v. *Advance Mortg. Corp.* (9th Cir. 1980) 618 F.2d 611.)

Nibbi further argues that section 3264 does not apply generally to suppliers' claims against the construction lender but only to liens asserted against

the construction loan fund. Section 3264 indeed applies only to rights "with respect to any fund for payment of construction costs, . . ." But the legislative intent could be easily evaded by allowing suppliers, who are barred from claiming a lien against the construction loan fund itself, to claim instead damages recoverable from the general assets of the lender. In *Boyd & Lovesee Lumber Co.* v. *Western Pacific Financial Corp.* (1975) 44 Cal.App.3d 460, 465 [118 Cal.Rptr. 699], the court observed that under the statute "[a] fair line is drawn between the contractors, subcontractors and materialmen on the one hand and the construction lenders on the other. The former at least have remedies by mechanics lien against the property, unbonded stop notice against the owner, and action upon the contract against the person or persons personally ordering the labor or material. The latter are relieved of the expense and risk of policing the ultimate distribution of construction funds and can concentrate on their primary duty of providing construction loans at lesser expense to the borrower and ultimately to the consuming public." (Fn. omitted.) To maintain this "fair line" between construction lenders and the suppliers of labor and materials, the court held that section 3264 should be construed broadly to bar "all theories of equitable liens or trust funds" asserted by the suppliers against lenders.

Under the analysis of *Boyd & Lovesee Lumber Co.*, section 3264 should not be given a narrow, technical interpretation but should be applied so as to maintain the allocation of financial risks—the "fair line"—among lenders and other parties that the Legislature intended. The analysis indicates that the section bars claims, based on the kind of activity that formerly gave rise to the equitable lien, whether the claimant seeks to recover from the construction loan fund or from the general assets of the lender. In a perceptive study, *California Civil Code Section 3264 and the Ghost of the Equitable Lien* (1979) 30 Hastings L.J. 493, 515, P. Gutierrez writes, "[t]he phrase 'with respect to' does not mean simply a direct attack on the loan fund itself. The language is broader in scope and appears to address indirect attacks as well. The basic test, so far as one may be discerned, appears to be whether the rights asserted focus on activities of the construction lender undertaken with regard to the loan fund." (See also *Pankow Const. Co.* v. *Advance Mortg. Corp., supra,* 618 F.2d 611, 617.)

Nevertheless, it does not follow that section 3264 always bars a supplier of labor and materials from recovering from a construction lender on a theory of unjust enrichment. The equitable principle of unjust enrichment provided part of the doctrinal underpinning of the equitable lien. But the law of restitution may give a supplier a cause of action against a lender for unjust enrichment under a broad range of circumstances distinct from those

on which the equitable lien was predicated. ■ In general, "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." (Rest., Restitution, § 1.) A critical limitation on this rule is that one who confers a benefit officiously is not entitled to restitution. "It must ordinarily appear that the benefits were conferred by *mistake, fraud, coercion* or *request*; otherwise, though there is enrichment, it is not unjust." (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 97, p. 126.) ■ Applying these principles, we may inquire whether Nibbi has stated a valid cause of action falling outside the scope of the equitable lien doctrine.

The complaint alleges that, to enhance the value of its security, Home induced Nibbi to perform work on the property, knowing that the developer was in default on its loan, and then secured the benefit of Nibbi's performance by purchasing the property at a private foreclosure sale for the amount of the loan balance.[1] The critical allegation is that Home actively *induced* Nibbi to provide the work. In an appropriate cause, such inducement may provide a cause of action distinct from that of an equitable lien. Section 3264 surely was not intended to give lenders impunity to pursue any strategem at the expense of contractors and subcontractors. In *Cal-West Nat. Bank* v. *Superior Court* (1986) 185 Cal.App.3d 96 [229 Cal.Rptr. 431], the court held that subcontractors could name a lender as a defendant in a complaint alleging conspiracy to defraud. Similarly, if Home's inducement falls within the traditional categories of mistake, fraud, coercion or request, it may give rise to a valid cause of action for unjust enrichment distinguishable from an equitable lien.

Though vaguely worded, the second amended complaint appears to allege that Home fraudulently induced Nibbi to provide the work. Paragraph 17 alleges in part: "Although the aforementioned agents of HOME did not inform Plaintiff when it would be paid, each of the aforementioned agents of HOME did assure Plaintiff that Plaintiff would be paid for work performed and that Plaintiff should continue to perform services. At the time the aforementioned agents made these representations, they knew Plaintiff would continue to perform services to improve the subject real property in specific reliance upon said representations." Paragraph 18 alleges in part that, after recording a notice of default against the developer, Home's agents "continued to assure Plaintiff that Plaintiff would be paid for services performed and specifically informed Plaintiff that HOME and its agents

---

[1] There is no merit to Home's argument that the summary judgment on the original complaint applies to the facts alleged in the third and fifth causes of action in the second amended complaint. These causes of action are factually and legally distinct from those affected by the summary judgment.

wanted the project to continue so that income could be generated in the form of rent-paying tenants."

Home's assurance that Nibbi would be paid could have been based on its own intention to make disbursements from the construction loan account or on the developer's probable success in making payment on the construction loan. The two are, of course, difficult to disentangle; the lender would act in response to the developer's performance. But since the complaint does not allege that Home itself promised to pay Nibbi,[2] it must be read as alleging that Home assured Nibbi that the developer would stay sufficiently current on its loan to permit continued financing. Nibbi contends that this assurance amounted to a misrepresentation on which it relied to its detriment. Its legal premise is sound: a contractor who confers a benefit on a construction lender in reliance on the lender's fraudulent misrepresentation may have a valid cause of action to recover the value of the benefit if the lender is in fact unjustly enriched by its performance.[3] The difficulty in Nibbi's position lies in the allegations of an actionable misrepresentation.

■ In tort law, a representation ordinarily will give rise to a cause of action for fraud or deceit only if it is a representation of fact rather than opinion. (Civ. Code, §§ 1572, 1710) "[P]redictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 447, p. 2712.) ■ We see no reason why a lesser standard should apply in unjust enrichment actions. Since Nibbi does not allege that Home itself promised to pay for the work, the alleged assurance must relate chiefly to future performance by the developer. The most that we can derive from the vaguely worded language is that Home optimistically assessed the developer's capacity to sustain continued financing. A representation of this sort constitutes a nonactionable expression of opinion. (*Borba* v. *Thomas* (1977) 70 Cal.App.3d 144, 152 [138 Cal.Rptr. 565].)

■ Nibbi's chief grievance, however, appears to be that, when Home expressed this assurance, it had filed a notice of default giving it the right to

---

[2] The context makes clear that this meaning was not intended. The cause of action was entitled "Unjust Enrichment" and does not purport to identify any agreement between Home and Nibbi.

[3] Home argues that as a matter of law the purchaser at a foreclosure sale cannot be unjustly enriched by the value of improvements to the property made before the sale. But in the cases it cites there was no direct relationship between the purchaser and the contractor providing the improvements. (*Barr Lumber Co.* v. *Shaffer* (1951) 108 Cal.App.2d 14, 24 [238 P.2d 99]; *Griffith Co.* v. *Hofues* (1962) 201 Cal.App.2d 502 [19 Cal.Rptr. 900]; *Rheem Mfg. Co.* v. *United States* (1962) 57 Cal.2d 621 [21 Cal.Rptr. 802, 371 P.2d 578]; *Kossian* v. *American Nat. Ins. Co.* (1967) 254 Cal.App.2d 647 [62 Cal.Rptr. 225].) Nibbi here alleges that the contractor acted in reliance on the assurances of the lender who later purchased the property. This factor opens the possibility of unjust enrichment.

conduct a foreclosure sale in three month's time. Nibbi argues that under the circumstances the assurance was so misleading as to subject the lender to a duty to make restitution. The contention raises the question of the construction lender's duty of disclosure to the contractor. The issue was more directly presented in Home's demurrer to the fifth cause of action alleging negligent misrepresentation.

Paragraph 33 of the fifth cause of action of the second amended complaint alleges in part that Home "negligently represented the status of the BRANNAN STREET INVESTORS' loan to Plaintiff." The alleged negligence is not based on any representation of fact but rather on the breach of a duty of disclosure. The relevant paragraph alleges: "HOME and its aforementioned agents had a duty to Plaintiff to disclose facts which HOME knew would materially increase the risk to Plaintiff of its being paid for work performed beyond that which HOME had reason to believe Plaintiff had intended to assume. HOME and its aforementioned agents breached its duty to Plaintiff by failing to disclose to Plaintiff that BRANNAN STREET INVESTORS was in default on its loan obligations and/or that HOME was planning to commence private sale foreclosure proceedings on its deed of trust."

This theory also confronts the barrier of Civil Code 3264. Under the equitable lien doctrine, the right of a supplier to rely on the construction loan fund implied correlative duties on the part of the construction lender. By abolishing the supplier's rights to the fund, section 3264 impliedly negates any duty that the lender may owe to the supplier. If the lender's duties to the supplier survived section 3264, the supplier would retain the right to bring an action against the lender based on its activities in establishing and administering the construction loan fund. This is precisely the kind of right that section 3264 was intended to abolish. *Boyd & Lovesee Lumber Co.* v. *Western Pacific Financial Corp., supra,* 44 Cal.App.3d 460 appears to reflect this analysis. There, a subcontractor sued the construction lender alleging that it had made negligent disbursements from the construction loan fund. Holding that the lender owed no duty toward the subcontractor on which negligence could be based, the court reasoned, "[i]t follows that the negligence claims must be based upon the violation of the duty owed as set forth above, in other words upon the assertion of a 'right with respect to such fund.' Such falls within the prohibition of section 3264." (*Id.* at p. 464.)

By the same token, we must reject Nibbi's argument that a duty may be based on analogy to a creditor's duty toward a surety (*Sumitomo Bank of Cal.* v. *Iwasaki* (1968) 70 Cal.2d 81 [73 Cal.Rptr. 564, 447 P.2d 956]) or on the lender's possession of exclusive knowledge of facts material to Nibbi's

risk. Either theory would in effect reinstate the sort of action against the construction lender that section 3264 was intended to end.

It is well established, however, that "where one who is under no duty to speak nevertheless does so . . . he is bound to speak honestly, and not to suppress facts which materially qualify those stated, . . ." (4 Witkin, Summary of Cal. Law, Torts, *supra*, at § 464, p. 2727; BAJI No. 12.37.) The rule has commonly been applied to vendors of real property. Thus, in *McCue* v. *Bruce Enterprises, Inc.* (1964) 228 Cal.App.2d 21, 27 [39 Cal.Rptr. 125], the court held: "Even though there may be no duty upon a vendor to speak upon a subject affecting the desirability of a sale to which he is a party, if he does speak, whether voluntarily or in response to an inquiry, he must make a full disclosure, and may not withhold or conceal any information within his knowledge bearing upon the subject about which he speaks, that materially affects the desirability of the property to be sold."

The facts alleged here present a close question concerning the application of this principle. Nibbi requested that Home give "adequate assurances" that it "would be paid for work performed." Though it was under no duty to reply, Home nevertheless "did assure [Nibbi] that [Nibbi] would be paid for work performed." While so encouraging Nibbi, Home knew that the developer was in default and had actually filed a notice of default—facts that materially and adversely affected Nibbi's prospects of payment. But the complaint still does not allege that Home made any representation of fact. It remains the law in California that a misrepresentation "must ordinarily be an affirmation of *fact*." (4 Witkin, Summary of Cal. Law, Torts, *supra*, at § 447, p. 2711.) A duty of disclosure arises when a statement of fact is misleading without additional or qualifying information. (Rest.2d Torts, § 529.) Thus, Civil Code section 1710 defines deceit in part as "[t]he suppression of a fact, by one who . . . gives information of other facts which are likely to mislead for want of communication of that fact. . . ." In the case at bar, Home allegedly gave Nibbi no more than a generally worded assurance that it would be paid. If such an assurance should give rise to a duty of further disclosure, lenders could not easily communicate with contractors without incurring the sort of obligations that Civil Code section 3264 was intended to avoid.

The allegations suggest that Home wished to have the job completed but dealt warily with Nibbi, encouraging it to provide the work but refraining from making promises or factual representations. Since enactment of section 3264, lenders will incur liability only by making such promises or representations. Home may well have skirted closely this area of liability,

but the allegations fall short of those required to state a valid cause of action.

The judgment is affirmed.

Racanelli, P. J., and Holmdahl, J., concurred.

A petition for a rehearing was denied December 20, 1988, and appellant's petition for review by the Supreme Court was denied February 16, 1989. Mosk, J., and Kaufman, J., were of the opinion that the petition should be granted.