[No. G004954. Fourth Dist., Div. Three. Aug. 29, 1989.]

FAMILIAN CORP., Plaintiff and Appellant, v.
IMPERIAL BANK, Defendant and Appellant.

[Opinion certified for partial publication.[1]]

---

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and III.

COUNSEL

George Sykulski, Stanley P. Lieber, Loraine Todd and Rochelle Reben for Plaintiff and Appellant.

Rosen, Wachtell & Gilbert, Mark L. Luevano, Jeffrey S. Wruble, Larry W. Gabriel and Jonathan D. Fink for Defendant and Appellant.

OPINION

WALLIN, J.—Can a secured construction lender defeat a bonded stop notice claimant's statutory priority to construction loan proceeds by segregating the fund into preallocated accounts and thereafter deducting charges and interest as accrued? The construction lender, Imperial Bank, appealing the summary judgment granted the stop notice claimant, Familian Corp., contends Civil Code section 3166[2] does not provide laborers and materialmen with a priority over the construction lender to preallocated and disbursed loan funds. As we describe below, the lender's position contravenes a strong public policy of this state to afford protection to laborers and materialmen who enhance the value of a lender's security but are otherwise unable to assure compensation for their work. Consistent with the historical solicitude for laborers and materialmen embodied in the Constitution, statutes, and case law, the summary judgment is affirmed.

In September 1981, Imperial Bank agreed to loan $3.8 million to a limited partnership, Rim Crest Villas, Ltd., to finance the construction of 24 condominium units. The loan was secured by a deed of trust on the real property upon which the units were to be constructed. During construction, Imperial paid approximately $528,000 to itself for preallocated loan expenses including interest, loan fees, document preparation fees, and general and administrative expenses. Approximately $188,000 remained in unexpended construction funds when Imperial received stop notice claims for $105,000 and foreclosed on the property. After foreclosure, but within the statutorily allotted time to file claims, Imperial received additional stop notices for a total of $427,000. In its interpleader action, Imperial deposited $105,000 with the trial court claiming the laborers and materialmen were entitled to a pro rata share of this fund only.

Familian, one of the bonded stop notice claimants, was unwilling to accept a small percentage of its claim for plumbing materials supplied to the Rim Crest project after Imperial had debited the construction fund for bank charges and interest. In its motion for summary judgment, Familian argued the law does not allow a construction lender to profit at the laborer and materialmen's expense by preallocating the costs of the construction loan, disbursing the loan proceeds to itself, foreclosing on its security made more valuable by virtue of the laborer and materialmen's work, and then refusing to pay for the work because the construction funds have been expended. The trial court agreed, finding there were sufficient loan funds to pay all stop notice claimants, and granted judgment for Familian.

---

[2] All statutory references are to the Civil Code unless otherwise specified.

I*

. . . . . . . . . . . . . . . . . . .

II

An entire body of constitutional, statutory, and case law is designed to protect the claims of laborers and materialmen. Out of this constellation of safeguards flickers section 3166, the focus of this appeal. It provides: "No assignment by the owner or contractor of construction loan funds, whether made before or after a stop notice or bonded stop notice is given to a construction lender, shall be held to take priority over the stop notice or bonded stop notice, and such assignment shall have no effect insofar as the rights of claimants who give the stop notice or bonded stop notice are concerned." Imperial argues a predisbursement allocation of loan proceeds to existing or established costs owed to a lender does not constitute a section 3166 assignment; nor is a section 3166 priority achieved by a laborer or materialman whose claim arises after construction funds have been disbursed. Similar claims asserted by construction lenders have been consistently rejected by the courts.

A. *Stop Notice Priority*

The construction lender in *Calhoun* v. *Huntington Park First Sav. & Loan Assn.* (1960) 186 Cal.App.2d 451 [9 Cal.Rptr. 479] contended " 'the stop notice caught nothing' " (*id.,* at p. 458) because it had agreed at a creditors' meeting to deposit the unexpended loan funds into an escrow account for a pro rata distribution. The lender further argued it had not violated Code of Civil Procedure section 1190.1, the statutory predecessor to section 3166, since it had not withdrawn the construction funds or credited them against the borrower's obligations. The court disagreed, holding "that the 'equitable garnishment' referred to in [Code of Civil Procedure] section 1190.1, subdivision (h), may be enforced through an action in equity; that the holder of construction funds may not invalidate the effect of a notice and bond given pursuant to the statutory provisions by thereafter transferring those funds to other creditors or using them to advance its own interests, as was done in the case at bar." (*Id.,* at pp. 459-460.)

In *Rossman Mill & Lbr. Co.* v. *Fullerton S. & L. Assn.* (1963) 221 Cal.App.2d 705 [34 Cal.Rptr. 644] the lender alleged the stop notice was subordinate to the terms of the building loan agreement with the borrower.

---

*See footnote 1, *ante,* page 681.

The agreement established a construction loan fund and controlled disbursements. The court recognized, "The statute is remedial and must be liberally construed to effect its objects and to promote justice. [Citations.] It is designed to protect mechanics and materialmen who furnish labor and materials that go to enhance the value of the owner's property, an enhancement to be paid for out of the building fund. That this enhancement in value also increases the security of the lender, must not be overlooked." (*Id.,* at p. 709.)

In *A-1 Door & Materials Co.* v. *Fresno Guar. Sav. & Loan Assn.* (1964) 61 Cal.2d 728 [40 Cal.Rptr. 85, 394 P.2d 829], the court rejected the lender's asserted right to use undisbursed funds to reduce the owner's debt or to complete the buildings as provided in the loan agreement. The court held, "Subsection (h) requires that funds earmarked for construction purposes be used to pay suppliers of labor and materials who file claims under the subsection and therefore supersedes the private arrangements of borrower and lender." (*A-1 Door & Materials Co.* v. *Fresno Guar. Sav. & Loan Assn., supra,* 61 Cal.2d 728, 734.) Similarly, in *Miller* v. *Mountain View Sav. & L. Assn.* (1965) 238 Cal.App.2d 644 [48 Cal.Rptr. 278] the lender attempted to establish priority by applying the loan balance to reduce the amount due on the note before it received the claimant's stop notice. The court explained: " 'The owners assigned the funds to defendant [lender] as security for their obligation to repay the loans and for any of their other obligations to defendant. [Fn. omitted.] Defendant agreed to disburse the funds according to a progress payment schedule. Thus defendant's possession of the funds and its defense to the stop-notice claims based on its asserted right to continued possession of the funds depend entirely on assignments invalidated by the terms of subsection (h).' [Citations.] The statutory provisions invalidate as to a claimant an assignment whether made before or after a verified claim is filed. Assertion of the lender's rights by virtue of his contract with the borrower must await the running of the period in which claims may be filed, and then yield priority to such claims as are filed." (*Miller* v. *Mountain View Sav. & L. Assn., supra,* 238 Cal.App.2d at p. 657.)

Materialmen and laborers also prevailed in several cases on the theory their claims constituted equitable liens against the construction fund. (See, e.g., *McBain* v. *Santa Clara Sav. & Loan Assn.* (1966) 241 Cal.App.2d 829 [51 Cal.Rptr. 78]; *Doud Lumber Co.* v. *Guaranty S. & L. Assn.* (1967) 254 Cal.App.2d 585 [60 Cal.Rptr. 94].) The equitable lien theory has since been expressly abolished by statute. (§ 3264.) Nevertheless, in language which remains applicable to cases not involving equitable liens, the courts recognized the superior position occupied by lending institutions whose interests were protected by deeds of trust on the property. "The lender had already protected itself with a first priority encumbrance on the property. . . . [It]

not only occupied this favored position but under the terms of the loan agreement had full control of the loan funds and of the progress payments to be disbursed therefrom." (*McBain* v. *Santa Clara Sav. & Loan Assn., supra,* 241 Cal.App.2d at p. 842.) "Yet, despite its dominant position in the arrangements and its apparent sophistication in commercial financing, it had not only neglected to protect its privileged position but now seeks to claim the benefits of the materials contributed to the property . . . ." (*Doud Lumber Co.* v. *Guaranty S. & L. Assn., supra,* 254 Cal.App.2d at p. 590.)

In *Idaco Lumber Co.* v. *Northwestern S. & L. Assn.* (1968) 265 Cal.App.2d 490 [71 Cal.Rptr. 422], after default by the borrower, the lender transferred the unexpended funds into its general fund and paid all creditors on a pro rata basis. "[I]t is settled that the construction lender cannot defeat the rights of a stop notice claimant by a transfer to itself, as here, or by overpayment of the fund." (*Id.,* at p. 496.)

In summary, a stop notice claimant's priority has been jealously safeguarded by the courts. ■ Lenders cannot avoid a section 3166 priority by private agreement. (*Rossman Mill & Lbr. Co.* v. *Fullerton S. & L. Assn., supra,* 221 Cal.App.2d 705, discussing Code Civ. Proc., § 1190.1.) This blanket proscription applies whether the construction loan agreement allows the lender to apply the undisbursed fund to reduce the borrower's debt or to complete the building either before or after receipt of the stop notice. (*A-1 Door & Materials Co.* v. *Fresno Guar. Sav. & Loan Assn., supra,* 61 Cal.2d 728; *Miller* v. *Mountain View Sav. & L. Assn., supra,* 238 Cal.App.2d 644.) Nor can lenders achieve priority by depositing unexpended construction funds into either a general fund or a separate escrow account for pro rata distribution. (*Idaco Lumber Co.* v. *Northwestern S. & L. Assn., supra,* 265 Cal.App.2d 490; *Calhoun* v. *Huntington Park First Sav. & Loan Assn., supra,* 186 Cal.App.2d 451.) In applying the legislative mandate of section 3166, courts have enforced the laborer and materialmen's priority over lenders and other creditors because the lender has a secured position and benefits from the increased value of the security due to the claimant's labor and materials.

B. *Preallocation of Construction Loan Funds and Periodic Disbursements to the Lender*

■ *A-1* and *Miller* establish that loan proceeds "earmarked for construction purposes" are subject to perfected stop notices. Imperial contends a preallocation of loan funds to an interest reserve as a condition of the loan is not an assignment of funds by the owner or contractor which are earmarked for construction purposes. Instead, it is a "pre-loan disbursement"

of funds the bank intends to loan. In essence, the bank is specifying how much it is willing to loan for each aspect of the project and the borrower is not given the discretion to use the allocated funds in any other manner or for any other purpose. The argument is unsupported by the record, however, and counter to the purpose of section 3166.

On appeal, Imperial claims to have established a $3.8 million line of credit for the Rim Crest project. The building loan agreement, however, has no language suggesting the preallocation of funds to pay points, interest, and other non-construction costs was a precondition to disbursements on the line of credit. In any event, section 3166 expressly provides that any assignments made *before* or after receipt of stop notices are subordinate to the perfected claims of laborers and materialmen. The lender is at liberty to establish whatever reserves or other devices are necessary to protect its interests. Section 3166 does not prohibit Imperial's practices; it simply assures priority to those who contribute the labor and materials to improve the property and increase the value of the lender's security.

Extracting a short phrase from several cases, all of which ironically were decided against construction lenders, Imperial contends a stop notice claimant's priority applies only to "unexpended" or "undisbursed" loan funds. (*Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 809 [132 Cal.Rptr. 477, 553 P.2d 637]; *A-1 Door & Materials Co.* v. *Fresno Guar. Sav. & Loan Assn.*, *supra*, 61 Cal.2d 728, 732; *Miller* v. *Mountain View Sav. & L. Assn.*, *supra*, 238 Cal.App.2d 644, 657.) It emphasizes that its fees, points, and interest were costs incurred and paid before Familian commenced work on the project and argues there can be no priority to funds already spent. But this argument seeks to engraft a loophole into section 3166. A construction lender would need only to deduct its profits at the inception of the loan to assure a double recovery at the expense of those who enhance the value of the property by supplying labor and materials.

Our holding is consistent with the Supreme Court's recognition of the "protective policy [which] continues to serve the needs of the construction industry. As was pointed out in *Cook* v. *Carlson* [(D.S.D. 1973)] 364 F.Supp. 24, 29: 'Labor and material contractors [in the construction industry] are in a particularly vulnerable position. Their credit risks are not as diffused as those of other creditors. They extend a bigger block of credit, they have more riding on one transaction, and they have more people vitally dependent upon eventual payment. They have much more to lose in the event of default. There must be some procedure for the interim protection of contractors in this situation.' Without such interim protection, the improvement may be completed, the loan funds disbursed, and the land sold

before the claimant can obtain an adjudication on the merits of his claim." (*Connolly Development, Inc.* v. *Superior Court, supra,* 17 Cal.3d at p. 827.)

We hold that a preallocation of construction loan funds and periodic disbursements to the lender are assignments within the meaning of section 3166. Therefore, "whether made before or after a stop notice or bonded stop notice is given to a construction lender," the assignment does not take priority over the stop notice. (§ 3166.) Laborers and materialmen are entitled to retain the protection historically afforded under section 3166 just as lenders retain the right to foreclose on their security interest in the property, including its enhanced value as a result of the construction.

III*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed as modified to correct the mathematical error discussed in part I of the unpublished portion.

Scoville, P. J., and Parslow, J.,† concurred.

---

* See footnote 1, *ante,* page 681.
† Assigned by the Chairperson of the Judicial Council.